

21 MISC 6 4 0

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| IN RE APPLICATION OF ALBERTO SAFRA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 |

Case No. 21-MC _____

### MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................... 1

I.    FACTUAL BACKGROUND ................................................................................ 4

    A.    The Parties ................................................................................................ 4

    B.    Relevant Non-Parties .............................................................................. 5

    C.    Background of the Safra Family Businesses and Petitioner ................... 5

    D.    Mr. Safra's Original Wills ....................................................................... 6

    E.    Joseph Safra's Deteriorating Health and Neurological Condition In 2019 ........... 8

        1.    Mr. Safra Began Exhibiting Severe Neurological and Cognitive Distress Starting In Early 2019 For Which He Initially Sought Treatment in Brazil .................................................................. 9

        2.    Mr. Safra Received Treatment From the Respondents In New York In an Unsuccessful Attempt to Address His Declining Neurological and Cognitive Functioning.......................................................... 13

    F.    In October 2019, Petitioner Left the Safra Family Business Under Pressure and as Disagreements with His Family Intensified................................. 16

    G.    During the Testamentary Proceedings In Switzerland, Petitioner Learned of the New Wills............................................................................................ 17

    H.    The Contemplated Foreign Proceedings.................................................. 18

    I.    Petitioner's Foreign Discovery Efforts .................................................... 19

    J.    Respondents Possess Highly Material Information For Use In Foreign Proceedings............................................................................................... 20

II.   ARGUMENT ..................................................................................................... 21

    A.    Legal Framework...................................................................................... 21

    B.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782. ............. 23

        1.    Respondents Are "Found" In The Southern District Of New York. ......... 23

        2.    The Discovery Sought Is For Use In Foreign Proceedings.................. 24

        3.    Petitioner Is An "Interested Person." .......................................... 26

    C.    All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks. ........................................... 27

        1.    The First Intel Factor Favors Granting Discovery............................. 27

        2.    The Second Intel Factor Favors Granting Discovery. ........................ 27

        3.    The Third Intel Factor Favors Granting Discovery. ........................... 28

        4.    The Fourth Intel Factor Favors Granting Discovery............................ 29

III.    CONCLUSION.......................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Assurances Sur La Vie v. Kraus,*
   62 F. Supp. 3d 358 (S.D.N.Y. 2014).................................................................. 16

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.,*
   No. 17-MC-00216(VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .............. 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   673 F.3d 76 (2d Cir. 2012)........................................................... 12, 13, 16, 19

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,*
   613 F. App'x 319 (5th Cir. 2015) ....................................................................... 15

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,*
   798 F.3d 113 (2d Cir. 2015)............................................................................... 17

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)........................................................................................... 14

*Euromepa S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1995)......................................................................... 13, 19

*Hertz Corp. v. Friend,*
   559 U.S. 77, 93 (2010)....................................................................................... 14

*In re Accent Delight Int'l Ltd.,*
   869 F.3d 121 (2d Cir. 2017).............................................................................. 16

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery,*
   121 F.3d 77 (2d Cir. 1997)........................................................................... 13, 20

*In re Application of OOO Prommesftstroy,*
   No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) ........................ 18

*In re Bayer AG,*
   146 F.3d 188 (3d Cir. 1998).............................................................................. 21

*In re Catalyst Managerial Servs., DMCC,*
   680 F. App'x 37 (2d Cir. 2017) ......................................................................... 16

*In re Children's Inv. Fund Found. (UK),*
   363 F. Supp. 3d 361 (S.D.N.Y. 2019)................................................................ 16

*In re Edelman,*
   295 F.3d 171 (2d Cir. 2002).............................................................................. 13

*In re Ex Parte Application of SERETM,*
   2013 WL 6141655 (N.D. Cal. Nov. 21, 2013) ........................................................... 17, 21

*In re Furstenberg Fin. SAS,*
   No. 18-MC-44(JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ................................... 15

*In re Hornbeam Corp.,*
   722 F. App'x 7 (2d Cir. 2018) ...................................................................................... 15

*In re Kiobel,*
   2017 WL 354183 (S.D.N.Y. Jan 24, 2017) ..................................................................... 15

*In re Mangouras,*
   No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ........................................ 14

*In re: Application of Bracha Found.,*
   663 F. App'x 755 (11th Cir. 2016) ................................................................................ 15

*Intel Corp. v. Advanced Micro Devices, Inc.,*
   542 U.S. 241 (2004) .......................................................................................... passim

*Inv. Vehicles v. KPMG, L.L.P.,*
   798 F.3d 113 (2d Cir. 2015) ......................................................................................... 17

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus,*
   62 F. Supp. 3d 358 (S.D.N.Y. 2014) .............................................................................. 16

*Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782,*
   No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) .............................................. 14

*Mees v. Buiter,*
   793 F.3d 291 (2d Cir. 2015) ......................................................................................... 14

## <u>Statutory Authorities</u>

28 U.S.C. § 1782 ........................................................................................... passim

Petitioner Alberto Safra ("Petitioner") respectfully submits this Memorandum of Law in support of his Application and Petition (the "Application") pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain limited discovery from Dr. Susan Bressman, Dr. Eli L. Diamond, Dr. Valentin Fuster, Dr. Viviane Tabar, Mount Sinai Health System ("Mount Sinai"), and Memorial Sloane Kettering Cancer Center ("MSKCC" and together with Drs. Bressman, Diamond, Fuster, and Tabar, and Mount Sinai, the "Respondents"), in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas").[1]

## PRELIMINARY STATEMENT

This Application arises from foreign testamentary proceedings concerning the wills of the late Joseph Yacoub Safra, founder of the Safra banking conglomerate, who passed away in December 2020 after battling numerous health and neurological ailments during the last years of his life. Mr. Safra is survived by his wife, Vicky Safra, and four children—Alberto (the Petitioner), Jacob, Esther, and David—who are heirs to Mr. Safra's substantial fortune. Until late 2019, each of the surviving Safra family members were in line to inherit shares of Joseph Safra's estate consistent with a careful estate plan that Joseph Safra had crafted with his advisors when he was of sound mind and not beset with the debilitating physical and neurological ailments. This estate plan was documented, *inter alia*, in three wills that Mr. Safra executed in 2010 and 2018 (the "Original Wills").

Following the execution of the Original Wills, Mr. Safra's physical and mental condition took a severe turn for the worse. In November 2019, with his father bed-ridden and no longer able to mediate business and family disputes between himself and other family members, Petitioner left

---

[1]   The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated July 12, 2021 ("Bento Decl.").

the Safra family business in Brazil under pressure from his family. As Petitioner learned shortly after his father's death and through the testamentary proceedings commenced in Switzerland, just weeks after he left the Safra family banking business, Mr. Safra hastily changed his wills in order to cut Petitioner off from his rightful inheritance and, correspondingly, increase Petitioner's siblings share of the late Joseph Safra's estate. These changes are documented in three new wills that Joseph Safra putatively executed in November and December 2019 (the "New Wills").

None of Petitioner's family members ever advised Petitioner of the New Wills. At the time the late Joseph Safra putatively executed the New Wills, he was under heavy medication for a variety of physical and neurological ailments that had left him, in the words of Mr. Safra's long-time physician, ███████████████████████████████████████." Mr. Safra was under no condition at that time to voluntarily and knowingly make changes to his wills, let alone changes that would deprive Petitioner, a devoted son who had loyally served his father for years in the family business, of his rightful inheritance. Such changes were in truth and fact the result of the undue influence of individuals who exploited Joseph Safra's vulnerable physical and mental condition. ████████████████████████████

████████████████████████████████████████████████

██████████

At the time Mr. Safra executed the New Wills in late 2019, he was under the care of the Respondents in New York. Respondent Dr. Susan Bressman is a neurologist at Respondent Mount Sinai, who treated Mr. Safra for numerous neurological impairments. Mr. Safra was also treated by Respondent Dr. Fuster, a cardiologist at Mr. Sinai, as well as Respondents Drs. Diamond and

Tabar, who work at Respondent MSKCC and specialize in neuro-oncology and neurosurgery, respectively, and treated Joseph Safra for recurring brain tumors.

Each of the Respondents—as the hospitals and physicians responsible for Mr. Joseph Safra's care in New York in late 2019—are highly likely to possess information relevant to challenges that Petitioner intends to lodge against the New Wills in the contemplated testamentary proceedings in Switzerland. Such challenges will include Petitioner's arguments that Joseph Safra's severe health and neurological ailments in late 2019 deprived him of the testamentary capacity to execute the New Wills and/or left him vulnerable to undue influence.

Accordingly, Petitioner brings this Application to obtain targeted medical records from Respondents for use in contemplated civil proceedings in Switzerland seeking to invalidate the wills ("Contemplated Foreign Proceedings").

This Application meets all of the requirements of Section 1782. Respondents "reside" and are "found" in the Southern District of New York because they are employed and maintain their headquarters here. The discovery sought by Petitioner is highly material and relevant to the issues at stake in the Contemplated Foreign Proceedings. Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel Corp. v Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) decision favors authorizing the discovery sought by Petitioner. Further, Petitioner has taken all of the necessary steps—including notifying Vicky Safra, the Personal Representative of the Safra estate, of this Application—to obtain confidential medical records under applicable law. Accordingly, Petitioner respectfully requests that the Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas and obtain discovery from the Respondents.

## I.    FACTUAL BACKGROUND

### A.    The Parties

*Alberto Safra.*  Mr. Alberto Safra is a businessman based in Brazil and the son and legal heir of Mr. Joseph Yacoub Safra.[2]

*Mount Sinai Health System.*  Mount Sinai is a non-profit corporation headquartered at 150 East 42nd Street, New York, NY 10017.[3]

*Memorial Sloane Kettering Cancer Center.*  MSKCC is a non-profit corporation headquartered at 1275 York Avenue, New York, NY 10065.[4]

*Physician Respondents.*  Dr. Susan Bressman is a neurologist and Chair of Neurology at Mount Sinai in New York, NY, where she is an attending physician from her office located at 10 Union Square East, 5J09, New York, NY 10003.[5]

Dr. Eli L. Diamond is a neuro-oncologist at MSKCC in New York, NY, where he is an attending physician from his office at 1275 York Ave, New York, NY 10065.[6]

Dr. Valentin Fuster is a cardiologist and a director of the Wiener Cardiovascular Institute at Mount Sinai New York, NY, where he is an attending physician from his office located at 1190 Fifth Avenue, Floor 1, New York, NY 10029.[7]

---

[2]   Declaration of Alberto Safra, dated July 26, 2021 ("Alberto Safra Decl."), ¶5.
[3]   Bento Decl. Exs. 8, 10.
[4]   Bento Decl. Ex. 9.
[5]   Bento Decl. Ex. 6.
[6]   Bento Decl. Ex. 4, 14
[7]   Bento Decl. Ex. 5.

Dr. Viviane Tabar, MD, is Chair, Department of Neurosurgery at MSKCC in New York, NY, where she is an attending physician from her office located at 1275 York Ave, New York, NY 10065.[8]

## B.   Relevant Non-Parties

*Mr. Joseph Safra.*   Prior to his death, Mr. Joseph Safra was a Brazilian banker and businessman, and head of the Safra Group, including Safra Bank, one of the largest banking institutions in Latin America.[9] Mr. Joseph Safra was married to Vicky Safra and the couple had 4 children: (i) the Petitioner, Alberto Joseph Safra; (ii) Jacob Joseph Safra ("Jacob"); (iii) Esther Safra Dayan ("Esther"); and (iv) David Joseph Safra ("David").[10]

*Personal Representative.*  Vicky Safra is the personal representative of Mr. Safra's estate appointed under the New Wills.[11]

## C.   Background of the Safra Family Businesses and Petitioner

The Safra family originated from Lebanon and Syria and immigrated to Brazil in 1952.[12] In 1955, the late Joseph Safra founded Banco Safra S.A., which is headquartered in São Paulo, Brazil ("Banco Safra"), and has become one of the largest private banks in Latin America and is now part of the Safra Group.[13] Joseph Safra served as the leader of the Safra Group from 1963 until his death on December 10, 2020.[14] In addition to Banco Safra, the Safra Group's banking holdings include (i) J. Safra Sarasin, headquartered in Basel, Switzerland, and (ii) Safra National

---

[8]  Bento Decl. Ex. 3, 13.
[9]  Bento Decl. Ex. 11.
[10]  Alberto Safra Decl., ¶7, n.1.
[11]  Alberto Safra Decl., ¶33.
[12]  Alberto Safra Decl., ¶6.
[13]  Alberto Safra Decl., ¶6.
[14]  Alberto Safra Decl., ¶6.

Bank of New York, headquartered in New York City, USA.[15]  The Safra Group's diverse portfolio includes finance, real estate, and agribusiness.[16]

Petitioner is one of Joseph Safra and his wife, Vicky Safra's, four children.  He joined the management of the Safra Group in 2004 and became responsible for Banco Safra in 2007.[17]  His work was consistently lauded by bank management, including his father, Mr. Joseph Safra.[18]  From 2007[19] to 2019[20] while Petitioner was a head of the bank's management, the bank's profits increased from R$ 830,9 million to R$ 2,2 billion, the credit portfolio from R$ 28,3 billion to R$ 111 billion, the net equity from R$ 3,9 billion to R$ 11,9 billion, and the default rates decreased from 2% to 0.6%.[21]

In 2010, six years after Petitioner joined the management of the Safra Group, his brother David also joined the management of Banco Safra.[22]

**D.    Joseph Safra's Original Wills**

Given his sizable fortune (and aside from the contested New Wills), Joseph Safra devoted substantial time, attention, and care during his lifetime to his estate planning.  This planning included donating most of his assets to his wife and children during his lifetime, including donations of shares in Banco Safra and in SNBNY Holdings Limited,[23] among other entities

---

15  Alberto Safra Decl., ¶6.
16  Alberto Safra Decl., ¶6.
17  Alberto Safra Decl., ¶7.
18  Alberto Safra Decl., ¶7.
19  Alberto Safra Decl., ¶7.
20  Alberto Safra Decl., ¶7.
21  Alberto Safra Decl., ¶7.
22  Alberto Safra Decl., ¶8.
23  Safra National Bank of New York Holdings Limited ("SNBNY Holdings") is a company incorporated under the laws of Gibraltar with its registered office in Gibraltar, and has as its subsidiary the Safra National Bank of New York. Alberto Safra Decl., ¶6, n.2.  The Petitioner is a shareholder of Class B shares in SNBNY Holdings. *Id*

around the world, to Petitioner.  With respect to his remaining assets, Joseph Safra executed the Original Wills in 2010 and 2018, which addressed the distribution of his assets in Brazil and around the world after his death, and provided for distributions to Petitioner, his siblings, and Vicky Safra, as discussed below:[24]

- ***October 2010 Will.***  On October 29, 2010, Joseph Safra executed a will in São Paulo, Brazil ("October 2010 Will") in which he distributed his shares and membership interests in a number of companies, including, *inter alia*, JS Administração de Recursos S.A., Safra Capital Management Limited, Banco Safra S.A. and Banque Safra Luxembourg S.A., to his sons (including Petitioner) in equal stakes, with reservation of usufruct.[25]  The October 2010 Will also distributed, *inter alia*, his interests in multiple investment funds in the Bahamas and companies not related to the financial markets to his four children, including Petitioner.[26]  The October 2010 Will was subsequently registered in Bern, Switzerland on June 12, 2012.[27]

- ***June 2018 Will.***  On June 13, 2018, Joseph Safra executed a will in New York ("June 2018 Will") in which he distributed, *inter alia*, all and any of his assets and rights related to his wealth in Brazil, including equity interests in financial, real estate, industrial, commercial companies, including Banco Safra S.A., J. Safra Participações S.A., Filbert Participações S.A., and Tehama Participações S.A.[28]

---

[24] Alberto Safra Decl., ¶ 9.
[25] Alberto Safra Decl., ¶ 9.
[26] Alberto Safra Decl., ¶ 9.
[27] Alberto Safra Decl., ¶ 9.
[28] Alberto Safra Decl., ¶ 9.

The assets subject to the June 2018 Will were to be distributed as follows: 55% *full* ownership to Joseph Safra's children (further subdivided into 28% distributions to each son, including Petitioner, and 16% to daughter Esther); 45% *bare* ownership ("*nua propriedade*") to Joseph Safra's children, including Petitioner, with reservation of usufruct.[29]

- ***November 2018 Will.*** Subsequently, on November 30, 2018, Joseph Safra executed another will ("November 2018 Will") to dispose of his assets and rights that are not situated in Brazil and Bahamas, including 100% of the shares of SNBNY Holdings. One hundred percent of the Class A shares in SNBNY Holdings were to be distributed to his wife, Vicky Safra.[30] Class B shares in SNBNY Holdings were to be distributed as follows: 28% in equal shares to each son, including Petitioner, and 16% to daughter Esther.[31]

### E.    Joseph Safra's Deteriorating Health and Neurological Condition In 2019

During the latter stages of his life, Joseph Safra battled a number of health ailments, including Parkinson's disease. ███████████████████████████

████████████████████████████████████████████████

███████████  ██████████████████████████████████

██████████████████████████████████

---

[29] Alberto Safra Decl., ¶9.
[30] Alberto Safra Decl., ¶9.
[31] Alberto Safra Decl., ¶9.
[32] Alberto Safra Decl., ¶10.
[33] Alberto Safra Decl., ¶10.

Shortly after Joseph Safra executed the June and November 2018 Wills, his physical and mental functioning entered into an alarming and rapid decline. The onset of such decline became increasingly evident when Mr. Safra fell and sustained a femural fracture in January 2019. He received treatment for this femural fracture at Respondent Mount Sinai in New York.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████ In late 2019, including during the time period when the New Wills were executed, Mr. Safra, with the help of his family members, also consulted with Respondents in New York.[34]  *See infra* Section E. 2.

During the course of these treatments, Mr. Safra's family members, including Petitioner, his mother and his siblings, kept each other apprised of Mr. Safra's health condition through electronic group chat messages on the WhatsApp platform. Some of Mr. Safra's physicians in Brazil—including his long-time personal physician, Dr. Jairo Tabacow Hidal—were included in these chat groups. Such messages are discussed below, as they reflect Mr. Safra's severe physical and mental vulnerability at or around the time he executed the New Wills.

        *1.*     *Mr. Safra Began Exhibiting Severe Neurological and Cognitive Distress*

---

[34]  Alberto Safra Decl., ¶22.

*Starting In Early 2019 For Which He Initially Sought Treatment in Brazil*



---

[35] Alberto Safra Decl., ¶13.
[36] Alberto Safra Decl., ¶14.
[37] Alberto Safra Decl., ¶14.
[38] Alberto Safra Decl., ¶14.
[39] Alberto Safra Decl., ¶14.
[40] Alberto Safra Decl., ¶15.
[41] Alberto Safra Decl., ¶15.



Mr. Safra's confusion and agitation continued through the month of August 2019.

42  Alberto Safra Decl., ¶15.
43  Alberto Safra Decl., ¶15.

45  Alberto Safra Decl., ¶16.

47  Alberto Safra Decl., ¶17.
48  Alberto Safra Decl., ¶17.





50   Alberto Safra Decl., ¶17.
51   Alberto Safra Decl., ¶17.
52   Alberto Safra Decl., ¶18.
53   Alberto Safra Decl., ¶18.

56   Alberto Safra Decl., ¶18.
57   Alberto Safra Decl., ¶19.



2.   *Mr. Safra Received Treatment From the Respondents In New York In an Unsuccessful Attempt to Address His Declining Neurological and Cognitive Functioning*

Starting in or around August 2019, Mr. Safra's Brazilian physicians began consulting with specialists in New York, including the Respondents. Such consultations included having Mr. Safra travel to New York in September 2019 to meet with "Dr. Fuster, cardiologist; Dr. Bressmann:

---

[58] Alberto Safra Decl., ¶19.
[59] Alberto Safra Decl., ¶19.
[60] Alberto Safra Decl., ¶20.
[61] Alberto Safra Decl., ¶21.

[64] Alberto Safra Decl., ¶21.

neurologist; and Dr. Diamond: neuro-oncologist."[65]  During the course of such consultations, the Respondents received updates about Mr. Safra's medical condition from his physicians in Brazil and provided advice and treatment concerning Mr. Safra's declining neurological and cognitive functioning.



[65]  Alberto Safra Decl., ¶22.
[66]  Alberto Safra Decl., ¶23.
[67]  Alberto Safra Decl., ¶23.
[68]  Alberto Safra Decl., ¶23.

[70]  Alberto Safra Decl., ¶24.



[70] Alberto Safra Decl., ¶24.

[73] Alberto Safra Decl., ¶24.
[74] Alberto Safra Decl., ¶25.
[75] Alberto Safra Decl., ¶25.
[76] Alberto Safra Decl., ¶26.
[77] Alberto Safra Decl., ¶26.
[78] Alberto Safra Decl., ¶26.

[80] Alberto Safra Decl., ¶26.



**F.      In October 2019, Petitioner Left the Safra Family Business Under Pressure and as Disagreements with His Family Intensified**

Since 2010, when he joined the management of Banco Safra, Petitioner's brother David never accepted the role that was determined for him by their father, Joseph Safra. David wanted to increase his control over areas of the bank for which Petitioner was responsible. David's ambition for more power and influence led to substantial professional and personal disagreements with Petitioner.[83]

These disagreements were ordinarily resolved by their father, Joseph Safra, who upheld the division of responsibilities that was defined years before. He handled the bank's management from an exclusive business standpoint and always valued Petitioner's leadership and decisions.[84] As Joseph Safra's health deteriorated, however, he was increasingly unable to mediate these issues.

---

[81] Alberto Safra Decl., ¶26.
[82] Alberto Safra Decl., ¶27. Dr. Hidal was the Safra family's doctor since 2003 and led the group of who treated Joseph Safra from 2018 to 2020. It is also worth noting that Dr. Hidal's report of September 25, 2019 was issued at the request of the family and prior to the execution of the New Wills and other acts that Petitioner intends to challenge in the Swiss testamentary proceedings. Alberto Safra Decl., ¶27.
[83] Alberto Safra Decl., ¶28.
[84] Alberto Safra Decl., ¶¶7, 28.

With their father bed-ridden in 2019, the disagreements between Petitioner and David deepened and intensified. The absence of Mr. Joseph Safra's leadership substantially changed the dynamics of the family's decision-making in the bank. These circumstances gradually led to the depletion of Petitioner's management powers to the point that Petitioner was precluded from performing his functions at the bank. Petitioner had no option but to leave the management of Banco Safra in October 2019, remaining in the company as a shareholder.[85] Petitioner's resignation was followed by that of the then-CEO and the COO of Banco Safra, who also left the bank. Petitioner subsequently began to devote himself to his personal projects, including founding ASA Investments, a multi-strategy asset management company that operates a wide range of investment funds, with offices in São Paulo and New York.[86] s

In this context, certain family members began retaliating against Petitioner by opposing his attempts to visit his father, isolating him from the various family businesses, and, as he later found out, taking decisions to harm his rights.[87] As a result, Petitioner was able to visit his father on only about four occasions until Mr. Joseph Safra's last hospitalization in 2020. During those visits, Petitioner was dismayed to see that his father's condition had not improved and had only worsened. Joseph Safra passed away on December 10, 2020.[88]

### G.    During the Testamentary Proceedings In Switzerland, Petitioner Learned of the New Wills

Following Joseph Safra's death, testamentary proceedings were initiated in Switzerland. In May 2021, during the course of those proceedings, Petitioner for the first time received

---

[85] Alberto Safra Decl., ¶29.
[86] Alberto Safra Decl., ¶29.
[87] Alberto Safra Decl., ¶30.
[88] Alberto Safra Decl., ¶31.

documentary information that in November and December 2019—while Joseph Safra was suffering from ████████████████████████████████████████

████████████████████████████████████████████████

████████████ Mr. Safra made changes to the Original Wills that completely cut off Petitioner's succession rights, correspondingly enriched his siblings, and were in direct conflict with the estate planning that Joseph Safra had conceived for years, including the wills executed in 2010 and 2018, while he was of sound mind.[89]

The changes to the Original Wills were reflected in the three New Wills that purported to both revoke the Original Wills (which contemplated Petitioner as a beneficiary, *see supra* Section D) and exclude Petitioner as a beneficiary.[90] The New Wills were executed on November 18 and 29, 2019 ("November 2019 Wills"), and December 5, 2019 ("December 2019 Will").[91] The November 2019 Wills were executed in Switzerland and encompassed assets situated in the Bahamas, Gibraltar, and other locations.[92] The December 2019 Will was executed in New York and encompassed assets situated in Brazil.[93]

### H.   The Contemplated Foreign Proceedings

Petitioner has suffered significant harm as a result of the involuntary revocation of the Original Wills and the execution of the New Wills.[94] Accordingly, Petitioner contemplates

---

[89]   Alberto Safra Decl., ¶32.
[90]   Alberto Safra Decl., ¶33.
[91]   Alberto Safra Decl., ¶33.
[92]   Alberto Safra Decl., ¶33.
[93]   Alberto Safra Decl., ¶33.
[94]   Alberto Safra Decl. ¶¶32. 33.

initiating civil proceedings in Switzerland to invalidate the November 2019 Wills (which were executed in Switzerland) and December 2019 Will.[95]

In the contemplated Swiss proceedings, Petitioner shall allege that the November 2019 Wills and December 2019 Will infringe on the rights of Petitioner as an heir of the estate of Joseph Safra.[96] For example, Petitioner will allege that between as early as April 2019 and December 2019, Joseph Safra was unable to act in a "reasonable manner due to a mental incapacity caused by his medical condition."[97] Accordingly, Joseph Safra was not capable of making the November 2019 Wills and December 2019 Will because "(1) he failed to understand the meaning, purpose, opportunity and consequences of the provisions set out in these Wills upon his assets and his Heirs and (2) he was not in a position to resist third party influence."[98] Because of his advanced age and severely declining medical condition, Joseph Safra thus "expressed wishes that were not his own, in particular as he was dependent on the assistance of third parties and unduly influenced by same."[99] In accordance with Article 519 para. 1 no. 1 of the Swiss Civil Code, the November 2019 Wills and December 2019 Will are therefore "invalid."[100]

**I.      Petitioner's Foreign Discovery Efforts**

While Section 1782 does not require a petitioner to exhaust foreign discovery remedies,[101] Petitioner has diligently sought to obtain evidence in Brazil, where his father was also treated, in

---

[95]   Declaration of David Wallace Wilson, dated July 26, 2021 ("Wilson Decl."), ¶¶31-36.
[96]   Wilson Decl., ¶34.
[97]   Wilson Decl., ¶34.
[98]   Wilson Decl., ¶34.
[99]   Wilson Decl., ¶34.
[100]  Wilson Decl., ¶34.
[101]  *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

support of the Contemplated Foreign Proceedings. Accordingly, on June 9, 2021, Petitioner requested that Joseph Safra's medical team in Brazil provide medical records pertaining to Joseph Safra's treatment and health conditions from January 1, 2018 to December 10, 2020. On June 11, 2021, certain Brazilian medical records were produced save for records from two Brazilian doctors who objected to the application. Petitioner subsequently moved to compel production of that outstanding information from those two doctors before the 25th Civil Court of São Paulo. On July 2, 2011, the 25th Civil Court of São Paulo granted Petitioner's motion to compel. The order is expected to be complied with in the near term.■

**J.      Respondents Possess Highly Material Information For Use In Foreign Proceedings**

The information that Petitioner requests in this Section 1782 Application from the Respondents—Mr. Safra's New York-based physicians and hospitals—are unique and they will assist Petitioner's claims in the Contemplated Foreign Proceedings by providing, *inter alia*, further evidence pertaining to Mr. Safra's neurological, psychological, and other medical impairments when he executed the New Wills in late 2019. Such medical records are likely to further support allegations of mental incapacity and undue influence in the Contemplated Foreign Proceedings. Respondents are likely to possess relevant information about these matters because they treated



Mr. Safra in 2019 for a variety of neurological, cognitive, and physical ailments, when the New Wills were executed.[103]

The Respondents are therefore likely to be in possession and control of information highly material to the Contemplated Foreign Proceedings. This information would be relevant to Petitioner's Swiss claims, as further explained in the Wilson Declaration filed in support of the 1782 Application.[104]

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding. *Intel*, 542 U.S. at 259. The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782.

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

---

[103] *See supra* __; Alberto Safra Decl., ¶¶22-27.
[104] *See* Wilson Decl., ¶34.

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Moreover, courts in this circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g., Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

**B.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.**

Petitioner satisfies the three statutory requirements of Section 1782: (1) Respondents are "found" in the Southern District of New York; (2) the requested information is for use in the Contemplated Foreign Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff/applicant in those foreign proceedings.

*1.    Respondents Are "Found" In The Southern District Of New York.*

Respondents Mount Sinai and MSKCC reside or are "found" in this district because they are headquartered here.[105] *See Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (noting that a corporation is found in the district where it is "essentially at home"); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business.") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)) (emphasis added).

Respondents Drs. Bressman, Diamond, Fuster, and Tabar are found in this district because they work in this district, including, inter alia, via the daily practice of medicine.[106] *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (holding that "daily practice of [profession] in

---

[105]  Bento Decl., Exs. 9-12.
[106]  Bento Decl., Exs 3-7, 13-14.

this jurisdiction gives it the requisite 'systematic and continuous' presence to be 'found' here for purposes of section 1782.").

### 2.  *The Discovery Sought Is For Use In Foreign Proceedings.*

The information sought in the proposed Subpoenas is "for use" in foreign proceedings. In the Second Circuit, "[w]here an applicant has not yet initiated a foreign proceeding, [Section 1782] discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims. Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'" *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (*citing Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1782 discovery is sought; it need only "be within reasonable contemplation."). Here, Petitioner will use the requested information to further plead and prove its civil claims in Switzerland.[107]

Petitioner's Contemplated Foreign Proceedings qualify as "foreign proceedings" for purposes of Section 1782. A petitioner need only "provide some objective indicium that the action is being contemplated" in order to satisfy this requirement. *In re Kiobel*, 2017 WL 354183, *3 (S.D.N.Y. Jan 24, 2017). Here, the declarations of Petitioner's Swiss lawyer[108] establishing that it has (1) been retained to pursue the claims articulated in his declaration, and (2) already begun preparing the necessary pleadings are objective evidence that Petitioner's "foreign proceeding[s]" are "within reasonable contemplation." *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (summary order) (holding that a foreign proceeding was reasonably contemplated where the

---

[107]  Wilson Decl., ¶¶ 35, 39.
[108]  Wilson Decl., ¶ 36.

applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate"); *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was "for use" in a contemplated proceeding because, inter alia, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

Further, the contemplated Swiss proceedings qualify as proceedings in a "foreign or international tribunal" for purposes of Section 1782. Indeed, numerous courts have found that civil proceedings before Swiss courts satisfy Section 1782's requirements. *See e.g. In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) (contemplated Swiss proceedings qualified as foreign proceeding under Section 1782); *In re Grynberg*, 223 F. Supp. 3d 197, 200–02 (S.D.N.Y. 2017) (finding that Swiss commercial proceedings is a foreign proceeding under Section 1782); *In re Ex Parte Application of Jommi*, No.

C 13-80212 CRB (EDL), 2013 WL 6058201, at *1 (N.D. Cal. Nov. 15, 2013) (authorizing Section 1782 discovery for proceeding in Switzerland).

Petitioner is not required to show that the information sought would be discoverable or admissible in the Contemplated Foreign Proceedings. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, Petitioner only needs to show that it has "the *practical ability* . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). Here, Petitioner plainly satisfies this requirement. The information sought in the Subpoenas is highly material and relevant to the Contemplated Foreign Proceedings.[109]

### 3. *Petitioner Is An "Interested Person."*

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Petitioner will be the plaintiff in the Contemplated Foreign Proceedings and is therefore an "interested person" under Section 1782.

---

[109] Wilson Decl., ¶¶35, 39.

**C.    All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks.**

Each of the *Intel* factors weighs in favor of granting the requested discovery here. *First*, the Respondents are not a party to the Contemplated Foreign Proceedings. *Second*, there is no reason to believe that Swiss courts would be unreceptive to evidence obtained through Section 1782 discovery. *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, Petitioner's focused document requests and request for limited testimonial evidence are carefully circumscribed and targeted to key facts so as to avoid undue burden on the Respondents.

*1.    The First Intel Factor Favors Granting Discovery.*

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, the Respondents are not a party to the Contemplated Foreign Proceedings.[110]

*2.    The Second Intel Factor Favors Granting Discovery.*

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. *See In re Application of OOO Promnesfstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"). There is a strong presumption that the foreign tribunal

---

[110]  Wilson Decl. ¶37.

will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

The Swiss courts will be receptive to evidence obtained through this Application.[111] Petitioner will have the opportunity to use the information obtained in this Application in advancing and proving his claims.[112]

### 3. The Third Intel Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A

---

[111] Wilson Decl. ¶40.
[112] Wilson Decl. ¶41.

foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first. *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy. Indeed, Swiss laws do not prohibit the collection of information sought via this Application.[113] The Swiss jurisdiction does not have any law or public policy against such discovery.[114]

### 4. *The Fourth* Intel *Factor Favors Granting Discovery.*

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the *single document request* and corresponding deposition topics are narrowly tailored, temporally limited, and directly relevant to the issues in the foreign proceedings. Whatever burden Respondents may incur by producing the requested discovery, it is both modest and proportionate given the circumstances.

---

[113] Wilson Decl. ¶ 41.
[114] Wilson Decl. ¶ 41.

Petitioner has complied with HIPAA 42 C.F.R. § 164.512(e)(1)(iii)[115] by providing notice

to the personal representative of the deceased.[116] Accordingly, under HIPAA 42 C.F.R. §

164.512(e)(1)(ii)(A),[117] the Respondents are now permitted to produce the information requested

in this 1782 Application.  *See also In re DiGiulian*, 314 F. Supp. 3d 1 (D.D.C. 2018) (granting

Section 1782 petition to obtain medical records from a D.C. physician for use in a Canadian legal

proceeding to invalidate a will); *In re DiGiulian*, 2020 WL 5253849 (D.D.C. Sept. 3, 2020) (same);

*DiGiulian v. Johns Hopkins Health Sys. Corp.*, 8:19-cv-2213-PX, 2019 WL 5064672 (D. Md. Oct.

9, 2019) (same).[118]

To the extent the Respondents have any concerns relating to confidential information,

Petitioner is willing to accommodate such concerns by stipulating to an adequate protective order.

*Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he

---

[115]   Pursuant to § 164.512 (e)(1)(iii) the party requesting health information need only demonstrate "a good faith attempt to provide written notice to the individual" regarding whom the information is sought, with such notice including "sufficient information about the[] proceeding in which the protected health information is requested to permit the individual to raise an objection" and that no objections were filed or all objections were resolved.

[116]   Bento Decl., ¶14.

[117]   Pursuant to § 164.512 (e)(1)(ii)(A) Respondents "may disclose protected health information in the course of any judicial or administrative proceeding" to the requesting party if the requesting party complied with the notice requirements of § 164.512(e)(1)(iii).

[118]   In actions brought in the U.S. pursuant to Section 1782, "it is federal, rather than state privilege law that controls." *In re Fed'n Internationale de Basketball, for a Subpoena Pursuant to 28 U.S.C. § 1782*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000); *see also, In re Christensen*, 2006 WL 278169, at *1 (S.D.N.Y. Feb. 3, 2006) (applying federal privilege law in a Section 1782 action). As Petitioner is next of kin and heir to Mr. Safra's estate, Respondents are also required under New York state law to produce the information. N.Y. Pub. Health Law § 18 (10) ("Nothing contained in this section shall restrict, expand or any way limit the disclosure of any [patient] information pursuant to articles twenty-three [Subpoenas, Oaths and Affirmations], thirty-one [Disclosure] and forty-five [Evidence] of the civil practice law and rules..."); N.Y. CPLR § 4504(c)(3) (requiring physician to "disclose any information as to the mental or physical condition of a deceased patient...when the privilege has been waived...if the validity of the will of the decedent is in question *by any heir-at-law or any of the next of kin or any other party at interest.*"); *see also In re Will of DeFilippo*, 149 Misc. 2d 598, 564 N.Y.S.2d 667 (Sur. 1990) (ordering the disclosure of medical records because "[i]t is undisputed that this doctor has information concerning the decedent's mental condition which is based upon his personal observations of her at a time relevant to these proceedings[,] [t]his information, which the Court finds to be exclusive, material[,] and necessary to the proponent in preparation for a trial in which the testamentary capacity of the decedent is at issue, is not only required to be disclosed by CPLR § 4504(c)(3), but is precisely the type of information which should be disclosed.").

beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").

## III.   CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas on Respondents; and (d) grant any and all other relief to Petitioner as deemed just and proper.

Dated:  August 5, 2021                         Respectfully submitted,

*Michael Carlinsky*

Michael Carlinsky
John H. Chun
Lucas V.M. Bento
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
johnchun@quinnemanuel.com
lucasbento@quinnemanuel.com

*Attorneys for Petitioner Alberto Safra*