UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| IN RE APPLICATION OF ALBERTO SAFRA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-MC ______ |
|---|---|

**DECLARATION OF ALBERTO SAFRA**

I, Alberto Safra, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I submit this declaration in support of my Application and Petition For An Order To Conduct Discovery From Dr. Susan Bressman ("Bressman"), Dr. Eli L Diamond ("Diamond"), Dr. Valentin Fuster ("Fuster"), Dr. Viviane Tabar ("Tabar"), Mount Sinai Health System ("Mount Sinai"), Memorial Sloane Kettering Cancer Center ("MSKCC" and together with Bressman, Diamond, Fuster, Tabar, and Mount Sinai, the "Respondents") For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("1782 Application").

2. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and accompanying Memorandum of Law.

3. Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; and (b) my review of relevant documents.

4. All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies. Where an exhibit is in a foreign language a certified translation is provided.

## I. PERSONAL BACKGROUND

5. I am a businessman based in Brazil and the son and legal heir of Mr. Joseph Yacoub Safra.[1] From 2009 to 2019, I was one of the management heads at Banco Safra S.A. In 2019, I founded ASA Investments, a multi-strategy asset management fund, of which I'm currently Chief Executive Officer.

## II. FACTUAL BACKGROUND

### A. Family and Business Background

6. Our family—the Safra family—originated from Lebanon and Syria and immigrated to Brazil in 1952. In 1955, my late father, Joseph Safra, founded Banco Safra S.A., which is headquartered in São Paulo, Brazil ("Banco Safra"), and has become one of the largest private banks in Latin America and is now part of the Safra Group. Joseph Safra served as the leader of the Safra Group from 1963 until his death on December 10, 2020. In addition to Banco Safra, the Safra Group's banking holdings include (i) J. Safra Sarasin, headquartered in Basel, Switzerland, and (ii) Safra National Bank of New York, headquartered in New York City, USA.[2] The Safra Group's diverse portfolio includes finance, real estate, and agribusiness.

7. I am one of Joseph Safra and my mother, Vicky Safra's, four children. I joined the management of the Safra Group in 2004 and became responsible for Banco Safra in 2007. In my experience, my work was consistently appreciated by bank management, including my father, Joseph Safra. From 2007[3] to 2019,[4] while I was a head of the bank's management, the

---

[1] My father, Mr. Joseph Safra was married to my mother, Vicky Safra, and the couple had 4 children: (i) myself, (ii) Jacob Joseph Safra ("Jacob"), (iii) Esther Safra Dayan ("Esther") and (iv) David Joseph Safra ("David").

[2] *See* Annual Report 2020, p. 35 – https://www.jsafrasarasin.com/internet/com/jssh_annual_report_2020.pdf. SNYBNY is owned by Safra National Bank of New York Holdings Limited ("SNBNY Holdings"), a company incorporated under the laws of Gibraltar, Spain, with its registered office in Gibraltar. I am a shareholder of Class B shares in SNBNY Holdings.

[3] *See* Banco Safra S.A. Official Announcement, March 6, 2008, available at https://www.imprensaoficial.com.br/DO/BuscaDO2001Documento_11_4.aspx?link=%2f2008%2fempresarial%2fmarco%2f06%2fpag_0082_09L79953TNVNLeDLLVP2OMUMNT2.pdf&pagina=82&data=06/03/2008&caderno=Empresarial&paginaordenacao=100082.

[4] *See* Banco Safra S.A. Annual Report, December 31, 2019, available at https://www.safra.com.br/data/files/CB/D7/52/F4/FDE7871028EDDE77E03EF9C2/Demonstra__es%20contabeis%20consolidado%2012_2019Contador0805.pdf .

bank's profits increased from R$ 830,9 million to R$ 2,2 billion, the credit portfolio from R$ 28,3 billion to 111 billion, the net equity from R$ 3,9 billion to 11,9 billion and the default rates decreased from 2% to 0.6%.

8. In 2010, six years after I joined the management of the Safra Group, my brother David also joined the management of Banco Safra.

**B. My Father's Original Wills**

9. My father devoted substantial time, attention and care during his lifetime to his estate planning. This planning included donating most of his assets to my mother and his children during his lifetime, including donations of shares in Banco Safra and SNBNY Holdings, among other entities around the world, to me. With respect to his remaining assets, my father executed the Original Wills in 2010 and 2018, which addressed the distribution of his assets in Brazil and around the world after his death, and provided for distributions to my siblings, mother, and me as discussed below:

- ***October 2010 Will.*** On October 29, 2010, my father executed a will in São Paulo, Brazil ("October 2010 Will") in which he distributed his shares and membership interests in a number of companies, including, *inter alia*, JS Administração de Recursos S.A., Safra Capital Management Limited, Banco Safra S.A. and Banque Safra Luxembourg S.A., to his sons (including me) in equal stakes, with reservation of usufruct. The October 2010 Will also distributed, *inter alia*, his interests in multiple investment funds in the Bahamas and companies not related to the financial markets to his four children, including me. The October 2010 Will was subsequently registered in Bern, Switzerland on June 12, 2012.
- ***June 2018 Will.*** On June 13, 2018, Joseph Safra executed a will in New York ("June 2018 Will") in which he distributed, *inter alia*, all and any of his assets

and rights related to his wealth in Brazil, including equity interests in financial, real estate, industrial, and commercial companies, including Banco Safra S.A., J. Safra Participações S.A., Filbert Participações S.A., and Tehama Participações S.A. The assets subject to the June 2018 Will were to be distributed as follows: 55% *full* ownership to my father's children (further subdivided into 28% distributions to each son, including me, and 16% to my sister Esther); 45% *bare* ownership ("*nua propriedade*") to my father's children, including me, with reservation of usufruct.

- ***November 2018 Will.*** Subsequently, on November 30, 2018, my father executed another will ("November 2018 Will") to dispose of his assets and rights that are not situated in Brazil and Bahamas, including 100% of the shares of SNBNY Holdings. One hundred percent of the Class A shares in SNBNY Holdings were to be distributed to my mother, Vicky Safra. Class B shares in SNBNY Holdings were to be distributed as follows: 28% in equal shares to each son, including me, and 16% to my sister Esther.

**C. My Father's Deteriorating Health Conditions in 2019**

10. During the latter stages of his life, my father battled a number of health ailments, including Parkinson's disease. [redacted]

11. Shortly after my father executed the June and November 2018 Wills, his physical and mental functioning entered into an alarming and rapid decline. The onset of such decline became increasingly evident when my father fell and sustained a femural fracture in January 2019. He received treatment for this femural fracture at Mount Sinai in New York.

12. During the course of my father's medical treatments, our family members, including my mother, my siblings, and myself, kept each other apprised of my father's health condition through electronic group chat messages on the WhatsApp platform. Some of my father's physicians in Brazil—including his long-time personal physician, Dr. Jairo Tabacow Hidal—were included or referenced in these chat groups.

(i) *My Father's Neurological and Cognitive Conditions Rapidly Deteriorated in 2019*

[redacted]

[redacted]

5 *See* Exhibit 1 at p.1. A certified translation of the excerpts in Exhibit 1 are excerpted hereto as Exhibit 2.
6 *See* Exhibit 1 at p. 1.
7 *See* Exhibit 1 at p.1.
8 *See* Exhibit 1 at p.1.
9 *See* Exhibit 1 at p.1.
10 *See* Exhibit 1 at p.1.

15. My father's condition did not improve in the summer of 2019.



[11] *See* Exhibit 1 at p. 1.
[12] *See* Exhibit 1 at p. 2.
[13] *See* Exhibit 3 at p. 1. A certified translation of the excerpts in Exhibit 3 are excerpted hereto as Exhibit 4.
[14] *See* Exhibit 3 at p. 1.
[15] *See* Exhibit 1 at p. 2.
[16] *See* Exhibit 3 at p. 1.
[17] *See* Exhibit 3 at p. 2.
[18] *See* Exhibit 3 at p. 2.
[19] *See* Exhibit 3 at p. 2.
[20] *See* Exhibit 1 at p. 2.

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

[redacted] [redacted]

---

21 *See* Exhibit 3 at p. 2, 3.

22 *See* Exhibit 1 at p. 2.

23 *See* Exhibit 3 at pp. 2, 3.

24 *See* Exhibit 5 at p. 1. A certified translation of the excerpts in Exhibit 5 are excerpted hereto in Exhibit 6.

25 *Id.*

26 *Id.*

27 *See* Exhibit 1 at p. 2.

28 *See* Exhibit 3 at p. 2, 3.

(ii) *My Father Receives Treatment In New York*

22. Starting in or around August 2019, my father's Brazilian physicians began consulting with specialists in New York, including the Respondents. Such consultations included having my father travel to New York in September 2019 to meet with "Dr. Fuster, cardiologist; Dr. Bressmann: neurologist; and Dr. Diamond: neuro-oncologist."[29] During the course of such consultations, the Respondents received updates about my father's medical condition from his physicians in Brazil and provided advice and treatment concerning my father's declining neurological and cognitive functioning.

[redacted]

[redacted]

[29] Dr. Hidal's September 25, 2019 Report, p.1. *See* Exhibit 7. A certified translation of Exhibit 7 is attached hereto as Exhibit 8.
[30] *See* Exhibit 3 at p. 1.
[31] *See* Exhibit 3 at p. 3.
[32] *See* Exhibit 3 at p. 4.



[33] *See* Exhibit 3 at p. 2.
[34] *See* Exhibit 3 at p. 3.
[35] *See* Exhibit 3 at p. 4.
[36] *See* Exhibit 1 at p. 3.
[37] *See* Exhibit 1 at p. 3.
[38] *See* Exhibit 1 at p. 3.
[39] *See* Exhibit 1 at p. 3.
[40] *See* Exhibit 1 at p. 3.
[41] *See* Exhibit 1 at p. 3.
[42] *See* Exhibit 3 at p. 4.
[43] *See* Exhibit 4. Dr. Hidal was the Safra family's doctor since 2003 and led the group of doctors who treated Joseph Safra from 2018 to 2020.

**D. Disagreements with Family Members Make Working Conditions Unbearable And Push Me Out of the Family Business**

28. Since 2010, when he joined the management of Banco Safra, my brother David never accepted the role that was determined for him by our father, Joseph Safra. David wanted to increase his control over areas of the bank for which I was responsible. David's ambition for more power and influence led to substantial professional and personal disagreements with me. These disagreements were ordinarily resolved by our father, Joseph Safra, who upheld the division of responsibilities that was defined years before. My father handled the bank's management from an exclusive business standpoint and always valued my leadership and decisions. As my father's health deteriorated, however, he was increasingly unable to mediate these issues.

29. With our father bed-ridden in 2019, the disagreements between me and David deepened and intensified. The absence of my father's leadership substantially changed the dynamics of the family's decision-making in the bank. These circumstances gradually led to the depletion of my management powers to the point that I was precluded from performing my functions at the bank. I had no option but to leave the management of Banco Safra in October 2019, remaining in the company as a shareholder. My resignation was followed by that of the then-CEO and the COO of Banco Safra, who also left the bank. I subsequently began to devote myself to my personal projects, including founding ASA Investments, a multi-strategy asset management that operates a wide range of investment funds, with offices in São Paulo and New York.

30. In this context, certain family members began retaliating against me by opposing my attempts to visit my father, isolating me from the various family businesses, and, as I later found out, taking decisions to harm my rights.

31. As a result, I was able to visit my father on only about four occasions until his last hospitalization in 2020. During those visits, I was dismayed to see that my father's condition had not improved and had only worsened. My father passed away on December 10, 2020.

E. **During the Testamentary Proceedings In Switzerland, I Learned of the New Wills**

32. Following my father's death, testamentary proceedings were initiated in Switzerland. In May 2021, during the course of those proceedings, I for the first time received documentary information that in November and December 2019—while my father was suffering from [REDACTED] my father made changes to the Original Wills that completely cut off my succession rights, correspondingly benefited my siblings, and were in direct conflict with the estate planning that my father had conceived for years, including his wills of 2010 and 2018.

33. The changes to the Original Wills were reflected in the three New Wills that purported to both revoke the Original Wills (which contemplated me as a beneficiary, *see supra* ¶9) and exclude me as a beneficiary. The New Wills were executed on November 18 and 29, 2019 ("November 2019 Wills"), and December 5, 2019 ("December 2019 Will"). The November 2019 Wills were executed in Switzerland and encompassed assets situated in the Bahamas, Gibraltar, and other locations. The December 2019 Will was executed in New York and encompassed assets situated in Brazil. My mother is the personal representative of Mr. Safra's estate appointed under the purported New Wills.

F. **My Efforts to Obtain Information From Brazilian Doctors**

34. I diligently sought to obtain evidence in Brazil, where my father was also treated, in support of the contemplated Swiss proceedings. Accordingly, on June 9, 2021, I requested that my father's medical team in Brazil provide medical records pertaining to my

father's treatment and health conditions from January 1, 2018 to December 10, 2020. On June 11, 2021, certain Brazilian medical records were produced save for records from two Brazilian doctors who objected to the application. I subsequently moved to compel production of that outstanding information from those two doctors before the 25th Civil Court of São Paulo. On July 2, 2021, the 25th Civil Court of São Paulo granted my motion to compel. The order is expected to be complied with in the near term.[44]

---

■ [redacted]

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

[illegible]
in SÃO PAULO, BRAZIL.

Alberto Safra