UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ALBERTO SAFRA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-MC _____ |

## DECLARATION OF DAVID WALLACE WILSON

I, David Wallace Wilson, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.        I submit this declaration in support of Mr. Alberto Safra ("Petitioner")'s Application and Petition For An Order To Conduct Discovery From Dr. Susan Bressman ("Bressman"), Dr. Eli L Diamond ("Diamond"), Dr. Valentin Fuster ("Fuster"), Dr. Viviane Tabar ("Tabar"), Mount Sinai Health System ("Mount Sinai"), Memorial Sloane Kettering Cancer Center ("MSKCC" and together with Bressman, Diamond, Fuster, Tabar, and Mount Sinai, the "Respondents") For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("1782 Application").

2.        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Declaration of Alberto Safra filed concurrently with the 1782 Application ("Alberto Safra Declaration") and accompanying Memorandum of Law dated July 12, 2021 ("Memorandum of Law").

3.        Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied to me by the Petitioner or its officers, directors, and employees, or professionals retained by them.

1

4.      All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies.  Where an exhibit is in a foreign language a certified translation is provided.

## I.      BACKGROUND AND QUALIFICATIONS

5.      I am a partner in Schellenberg Wittmer's Private Wealth practice.  I advise individuals and families on wealth structuring and estate planning for their personal and business assets.  I graduated with the following degrees: Master of Law, University of Geneva (Switzerland), Master of Law in Comparative Jurisprudence (M.C.J.), New York University (United States).  I was admitted to the Geneva Bar in 2003 as well as to the New York Bar in 2002.  I am also a STEP Qualified Practitioner (2002) and I successfully completed the STEP Advanced Certificate in Mediation (2013). I have litigated numerous civil law cases before the Swiss Courts.

6.      I have been the Chairman of STEP Geneva from 2014 to 2020, and since 2018 I am an expert on Swiss trust law with the Swiss Federal Department of Justice. I have received several recognitions, inter alia: Legal 500: Private Clients, Leading Firms – French-Speaking 2015-2021, Chambers & Partners High Net Worth 2014-2020, Who's Who Legal: Private Clients, Global Elite Thought Leader 2018-2020, WealthBriefing Swiss Awards: Swiss Leading Individual Award 2015, Private Client Global Elite List 2012/2017-2021, Who's Who Switzerland 2015-2021, CityWealth Leaders List 2017-2020, Expert Guides: Best of the Best 2018-2020.

7.      I am the counsel of record for Petitioner in the contemplated Swiss Litigation described below, and I am in charge of leading those proceedings for Petitioner.

8.      A copy of my resume is attached hereto as **Exhibit 1.**

2

## II.    RELEVANT PARTIES AND NON-PARTIES

### A.    The Parties

9.    **Alberto Safra.**   Mr. Alberto Safra ("Petitioner") is a businessman based in Brazil and the son and legal heir of Mr. Joseph Yacoub Safra.

10.    ***Mount Sinai Health System.***   Mount Sinai is a non-profit corporation headquartered at 150 East 42nd Street, New York, NY 10017.[1]

11.    ***Memorial Sloane Kettering Cancer Center.***  MSKCC is a non-profit corporation headquartered at 1275 York Avenue, New York, NY 10065.[2]

12.    ***Physicians.***   Dr. Viviane Tabar, MD, is Chair, Department of Neurosurgery at MSKCC in New York, NY, where she is an attending physician from her office located at 1275 York Ave, New York, NY 10065.[3]   Dr. Eli L Diamond is a neuro-oncologist at MSKCC in New York, NY, where he is an attending physician from his office at 1275 York Ave, New York, NY 10065.[4]   Dr. Valentin Fuster is a cardiologist and a director of the Wiener Cardiovascular Institute at Mount Sinai in New York, NY, where he is an attending physician from his office located at 1190 Fifth Avenue, Floor 1, New York, NY 10029.[5]   Dr. Susan Bressman is a neurologist and Chair of Neurology at Mount Sinai in New York, NY, where she is an attending physician from her office located at 10 Union Square East, 5J09, New York, NY 10003.[6]

### B.    Relevant Non-Parties

13.    ***Mr. Joseph Safra.***   Mr. Safra was a Brazilian banker and businessman.   He was head of the Safra Group, including Safra Bank, one of the largest banking institutions in Latin America.[7]   Mr. Safra was married to Vicky Safra ("Mrs. Safra") and the couple had 4 children:

---

[1]    *See* Declaration of Lucas Bento filed in support of the 1782 Application ("Bento Decl."), Ex. 10.
[2]    Bento Decl. Ex. 9.
[3]    Bento Decl. Ex. 3.
[4]    Bento Decl. Ex. 4.
[5]    Bento Decl. Ex. 5.
[6]    Bento Decl. Ex. 6.
[7]    Bento Decl. Ex. 11.

(i) Jacob Joseph Safra ("Jacob"), (ii) Esther Safra Dayan ("Esther"), (iii) Alberto Joseph Safra (i.e. the Petitioner), and (iv) David Joseph Safra ("David").[8]

14. ***Mrs. Vicky Safra***. Mrs. Safra is the personal representative/executrix of Mr. Safra's estate appointed under the purported New Wills.[9]

## III.   FACTUAL BACKGROUND

15. The present dispute turns on whether a number of wills (as further defined below) made by Mr. Joseph Safra in November and December 2019 are invalid because of an alleged mental incapacity by Mr. Safra at this time.

16. A more detailed description of all facts surrounding the succession of Mr. Safra is outlined in detail in the Alberto Safra Declaration. Therefore reference is made to the facts as set out in the Alberto Safra Declaration.

17. For the purpose of my declaration, I will restate in the following some of the facts that are particularly relevant for the Contemplated Swiss Proceedings (as defined in section IV below).

18. After being admitted to the Albert Einstein Hospital in São Paulo, Brazil in late 2019, Mr. Safra on December 10, 2020, passed away.[10]

19. Mr. Safra is survived by his wife, Vicky, and four children, sons Alberto (the Petitioner) and Jacob, daughter, Esther, and son David who are all heirs to Mr. Safra.[11]

20. Mr. Safra donated most of his assets to his wife and children, including Petitioner during his lifetime, including donations of shares in Banco Safra S.A. to Petitioner.[12] With respect to the remaining assets, Mr. Safra executed wills and testamentary instruments in 2010, 2012, and 2018, dealing with the distribution of his assets in Brazil and around the world

---

[8]   Alberto Safra Decl., ¶5, n.1.
[9]   Alberto Safra Decl., ¶33. *See infra* ¶28.
[10]   Alberto Safra Decl., ¶31.
[11]   Alberto Safra Decl., ¶5, n.1.
[12]   Alberto Safra Decl., ¶9.

("Original Wills", *see* section D of the Memorandum of Law for more details on the Original Wills). Importantly, the Original Wills named the Petitioner as a beneficiary. I have myself reviewed the Original Wills (the official English translation).[13]

21.    I understand that throughout 2018 and, more severely, in 2019, Mr. Safra's health deteriorated rapidly, including a deterioration of his neurological abilities and psychological wellbeing.[14] ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

22.    I further understand, that by the end of 2019, the Petitioner became increasingly estranged from his family and this prevented him from knowing the specific details of his father's condition.[16]

23.    I also understand that Mr. Safra was treated by doctors in New York, including the Respondents here.[17]

24.    Unbeknownst to Petitioner, in November and December 2019, ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████    Mr. Safra executed three new wills that revoked the Original Wills (which contemplated Petitioner as a beneficiary) and excluded the Petitioner as a beneficiary ("New Wills").[18]

---

[13]   Alberto Safra Decl., ¶9.
[14]   Alberto Safra Decl., ¶10-27.
[15]   Alberto Safra Decl., ¶10-27; Memorandum of Law, Section E.
[16]   Alberto Safra Decl., ¶31.
[17]   *See* Alberto Safra Decl., ¶¶22 - 26.
[18]   Alberto Safra Decl., ¶32-33.

25.     The New Wills were executed on November 18 and 29, 2019 ("November 2019 Wills"), and December 5, 2019 ("December 2019 Will"). I have myself reviewed the New Wills (the official English translation). The November 2019 Wills were executed in Switzerland and encompassed assets situated in the Bahamas, Gibraltar, and other locations. The December 2019 Will was executed in New York and encompassed assets situated in Brazil.[19]

26.     In the second half of 2019, Respondents conducted medical exams on Mr. Safra regarding his neurological, psychological, and other medical conditions.[20]

27.     On December 10, 2020, Mr. Safra passed away.[21]

28.     On April 5, 2021 the *Juge de la Commune de Crans-Montana*, Johan Beltramini, served on the Heirs a copy of the Original Wills and the New Wills. It is my understanding that this was the first time that the Petitioner had received a copy of the New Wills. Judge Johan Beltramini also mentioned (1) that Brazilian substantive law would apply to the estate and (2) that Mrs. Safra had been appointed as executrix, both as per Mr. Safra's stated wishes (**Exhibit 2**).

29.     By its decision of June 11, 2021 the *Juge de la Commune de Crans-Montana*, Johan Beltramini, officially appointed Vicky Safra as administrator of the estate of Mr. Safra (**Exhibit 3**).

## IV.     FOREIGN PROCEEDINGS IN SWITZERLAND

30.     Switzerland has 26 cantons. In 2011, a harmonized Federal civil procedural law – the Swiss Civil Procedural Code ("**CPC**") – was introduced, which equally applies to all cantons. In the normal course of a civil action on the merits, the parties – in most cases – must first undergo mandatory conciliation proceedings, which give the parties a simple and cost-

---

[19]     Alberto Safra Decl., ¶33.
[20]     Alberto Safra Decl., ¶22 - 26.
[21]     Alberto Safra Decl., ¶31.

effective method to mediate and potentially settle the case. If no settlement is reached, the plaintiff may initiate formal court proceedings within a certain time after the closing of the conciliation proceedings. A request for conciliation is a mandatory and integral first step of virtually all Swiss civil litigation.

31.     Petitioner, *inter alia*, now intends to commence proceedings with the *Juge de Commune de Crans-Montana* in the Canton of Valais, Switzerland against Mrs. Safra, Jacob, Esther and David, heirs of the estate of Mr. Safra (all together "Heirs"). The action concerns claims that the New Wills of Mr. Safra were substantially invalid ("Contemplated Swiss Proceedings").

32.     Under Swiss probate law, a purported heir to a will can apply to invalidate a will, *inter alia*, if the testator was not capable of making a will at the time the will being challenged was made (article 519 para. 1 no. 1 Swiss civil code ("**SCC**"); **Exhibit 4**). In general, a testator may validly make a will if he is 18 years old and above and mentally capable (article 467 SCC; **Exhibit 5**). Mentally capable is anyone who is not prevented from acting in a reasonable manner due to, *inter alia*, mental incapacity, psychiatric condition, intoxication or similar condition (article 16 SCC; **Exhibit 6**). The capacity to act in a reasonable manner depends on 2 factors: 1) The individual's ability to understand the meaning, purpose, opportunity and consequences of a particular behaviour – in succession matters, the deceased must be aware of the consequences of the provisions he set outs in a will upon his assets and his heirs; and 2) to act freely, based upon his own personal wishes and preferences – in succession matters, the deceased must be in a position to resist third party influence.

33.     Generally, mental capacity is presumed. Thus the burden of proof to show the particular individual actually was not mentally capable, lies with anyone challenging such presumption. However, this general presumption does not apply where there are serious grounds to object to the individual's capacity, like neurological, psychological, or psychiatric

conditions. In such circumstances, the person's mental incapacity is rather presumed and thus the burden of proof lies with the party arguing that the testator was mentally capable at the time of making the will.

34.     In the Contemplated Swiss Proceedings, Petitioner will allege that the New Wills infringe the rights of the Petitioner as an heir of the estate of Mr. Safra. For example, Petitioner will allege that the testator, Mr. Safra, by the time he made the New Wills, *i.e.* (i) on November 18, 2019 and on November 29, 2019 (November 2019 Wills, executed in Geneva and Crans-Montana respectively) and (ii) on December 5, 2019 (December 2019 Will, executed in New York) was not capable of acting in a reasonable manner due to a mental incapacity caused by his medical condition. At or around that time, Mr. Safra was not able to (1) understand the meaning, purpose and consequences of the provisions he set out in his New Wills upon his assets and the Heirs and (2) act freely and absent of third-party influence. Petitioner will therefore allege that Mr. Safra was not capable at the time of making the New Wills because (1) he failed to understand the meaning, purpose, opportunity and consequences of the provisions set out in these New Wills upon his assets and his Heirs and (2) he was not in a position to resist third party influence. Because of his advanced age and severely declining medical condition, Mr. Safra thus expressed wishes that were not his own, in particular as he was dependent on the assistance of third parties and unduly influenced by the same. In accordance with Article 519 para. 1 no. 1 SCC – (**Exhibit 4**), the November 2019 Wills and the December 2019 Will are therefore invalid. Petitioner will in particular also allege that, because of Mr. Safra's serious medical condition, mental capacity can no longer be presumed and it will be for the Heirs to show that he in fact was mentally capable at the time he made the November 2019 Wills and the December 2019 Will.

35.     Respondents, as healthcare providers who treated and examined Mr. Safra, *see* Alberto Declaration, ¶¶22-26, are highly likely to possess information as to his medical

condition, in particular his mental, neurological, and psychological state at that time, which is highly relevant to the Contemplated Swiss Proceedings.

36.     Petitioner has invested considerable resources in preparing the lawsuit (including by preparing an application/complaint) against the Heirs to be filed with the competent Crans-Montana court seeking that the New Wills be declared invalid because of Mr. Safra's incapacity to act in a reasonable manner and to resist third party influence.

37.     Swiss courts do not normally have subpoena power over persons like Respondents who are not parties to the Contemplated Swiss Proceeding and that do not reside in or are not located in Switzerland. Accordingly, a Swiss court would not be able to compel documentary or testimonial evidence from Respondents for use in Petitioner's Contemplated Swiss Proceedings.

## V.     JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

38.     As the partner in charge of the Contemplated Swiss Proceedings and a specialized Trust and Estate Practitioner (TEP), I have a deep understanding of the issues in the Contemplated Swiss Proceedings. The information sought in the proposed subpoenas attached as Exhibit 2 to the Declaration of Lucas Bento (filed concurrently with this 1782 Application) is highly material to the proceedings before the Contemplated Swiss Proceedings.

39.     Specifically, the documents and the testimony that Petitioner requests in the 1782 Application will assist Petitioner's case in the Contemplated Swiss Proceedings by further enabling Petitioner to specify and prove that the totality of circumstances will show that Mr. Safra, at the time of the making of the New Wills, was indeed incapable of acting in a reasonable manner due to his mental, physical, neurological, and psychological condition which precluded him from understanding the meaning, purpose and consequence of the provisions he set out in his New Wills. The information requested via the 1782 Application

will also further enable the Petitioner to demonstrate Mr. Safra's inability to act freely (i.e. that he was subject to undue influence).

40.     In the Contemplated Swiss Proceedings, Petitioners will have the opportunity to present evidence – including information obtained in the Section 1782 action in the form of documentary evidence and any deposition transcripts – until the factfinding stage of the proceedings is closed.

## VI.     SWISS COURT'S RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF SWISS PROOF-GATHERING POLICIES

41.     I have no reason to believe that the Swiss courts would not be receptive to the judicial assistance requested in the 1782 Application, and the request does not seek to circumvent foreign proof-gathering restrictions or other policies of Switzerland.  To be clear, there is no restriction or prohibition under Swiss law for collecting and using the type of discovery that is sought by the Petitioner via his 1782 Application. Medical records and medical practitioners' statements and observations are typically used in Switzerland in support of proceedings such as the Swiss Contemplated Proceedings.

## VII.    ACCESS TO COURT RECORDS UNDER SWISS LAW

42.     Petitioner will make every reasonable effort under Swiss law to keep confidential in the Contemplated Swiss Proceedings any information provided by the Respondents and designated as "confidential" under a protective order.

43.     In Switzerland, civil (including probate) proceedings may be conducted privately where the public interest or where the interest of one of the participants (i.e. the parties or a witnesses) so requires. In addition, all court decisions are fully anonymized before being published.

44.     After the final hearing, the Swiss court will issue a written opinion which will be served upon the parties. To the extent that the opinion might reveal confidential information of the Respondents or their patient(s) produced through this 1782 Application, Petitioner will cooperate in requesting the Swiss court to adapt the drafting of its written opinion to the necessities of protecting confidentiality, including the redaction of any confidential information.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the

United States that the foregoing is true and correct.

Executed on July _____ , 2021
in Geneva, Switzerland.

David Wallace Wilson