UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF ALBERTO SAFRA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-MC-00640-GHW-JLC |

**PETITIONER ALBERTO SAFRA'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR US IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

Michael Carlinsky
Lucas V.M. Bento
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, Floor 22
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
lucasbento@quinnemanuel.com

Gavin S. Frisch
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Telephone: (617) 712-7100
Facsimile: (617) 712-7200
gavinfrisch@quinnemanuel.com

*Attorneys for Petitioner Alberto Safra*

I.      **INTRODUCTION**

Petitioner's Application seeks critical medical evidence from Respondents for use in a pending Swiss proceeding[1] relating to Mr. Joseph Safra's ("Mr. Safra") health during and around the time his testamentary instruments ("New Wills") were revised to cut off Petitioner from his rightful inheritance. Respondents' Response and Intervenor Vicky Safra's Opposition provide no real basis to deny Petitioner's Application. As an initial matter, Respondents—who are the only parties being asked to produce information here—do not oppose Petitioner's Application. Indeed, they have agreed to produce documents responsive to the document subpoenas subject to Petitioner's agreement to cover the costs of production (which he has agreed to cover) and have also agreed to work in good faith with Petitioner with respect to the deposition subpoenas, including the duration of any deposition that is authorized by the Court.

Intervenor Vicky Safra ("Ms. Safra") similarly does not oppose the production of documents from 2019 and does not dispute that Petitioner's Application satisfies the statutory requirements under 28 U.S.C. § 1782. Rather, Ms. Safra urges the Court to deny Petitioner's deposition subpoenas and narrow his document subpoenas based on some of the discretionary *Intel* factors. However, Ms. Safra's objections are unfounded for a number of reasons. *First*, and while there is no need to show that the evidence will be admissible abroad, the Declaration of Professor Nicolas Jeandin (a law Professor, Judge, and lawyer in Switzerland) confirms that deposition transcripts of any deposition taken in this case will be admissible in the Swiss Proceeding. Similarly, both US and Swiss law—including Second Circuit precedent and the Swiss Civil Procedural Code—do not impose any obligation on Petitioner to first request the same evidence

---

[1] On May 3, 2022, the "Contemplated Swiss Proceeding" referred to in Petitioner's Application was initiated in Switzerland. *See* Supp. Wilson Decl. ¶5.

- 1 -

via the Hague Convention.  *Second*, Swiss Courts have no power to compel discovery from Respondents as they are all located outside Switzerland.  And even if they did, it belies belief that Respondents, who are all located in this district, would prefer to be forced to produce documents in Switzerland rather than doing so here.  Such an arrangement (which was proposed by Intervenor, not Respondents) would, moreover, subvert the twin aims of Section 1782—providing an efficient means of obtaining discovery in the U.S., and encouraging other countries, by example, to provide reciprocal avenues for obtaining discovery abroad.  *Third*, given Mr. Safra's multiple health conditions, discovery from 2018 and 2020 is highly relevant to make a full determination of his mental capacity, when he made the New Wills in 2019.  Ms. Safra's request to temporally narrow the requests therefore ignores the factual and medical bases for the requested discovery. Accordingly, this Court should grant Petitioner's Application in full.

**II.    ARGUMENT**

    **A.    The Court Should Allow Petitioner's Request to Take Depositions**

        **1.    *Intel* Factor 1: Respondents are not Participants in the Swiss Proceeding**

The first *Intel* factor considers whether the parties from whom discovery is sought are participants in the foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  Respondents not only are not parties to the Swiss Proceeding but also "do not have any interest in [that] proceeding."  Dkt. 50 at 1.  The first *Intel* factor thus weighs in favor of discovery.  *See, e.g.*, *Fund for Prot. of Inv. Rts. in Foreign States v. AlixPartners, LLP*, 5 F.4th 216, 230 (2d Cir.), *cert. granted sub nom. AlixPartners, LLP v. Fund for Prot. of Investors' Rts. in Foreign States*, 142 S. Ct. 638 (2021) (weighing first *Intel* factor in favor of discovery where respondent was "not a participant in [the foreign] arbitration and [was] otherwise outside the

arbitral panel's jurisdictional reach as a third party, and the evidence sought [was] not otherwise readily discoverable.").

Although that should end the discussion on this issue, Ms. Safra nonetheless contends that the first *Intel* factor weighs against discovery because the term "participant" refers to "anyone who might appear before the foreign tribunal as a witness," and Respondents "may appear as [] nonparty witness[es] in the foreign proceedings. Dkt. 51 at 7 (quoting *In re App. of the Coalition to Protect Clifton Bay*, 2014 WL 545823, at *3 (S.D.N.Y. Oct. 28, 2014)). But whether Respondents may appear as nonparty witnesses before the Swiss court is nothing but conjecture and speculation, especially where they are all beyond the Swiss court's jurisdictional reach. Jeandin Decl., ¶40. In any event, *Clifton Bay* is factually inapposite as the nonparty witness agreed in writing to testify in the foreign proceeding, and the Court merely stated that the first *Intel* factor "**may**" (not "must") weigh against granting the petition in that circumstance. *See* 2014 WL 545823, at *3 ("If, however, 'participant' refers more broadly to anyone who might appear before the foreign tribunal as a witness, then the first factor *may* weigh against granting the petition, as the [non-participant witness] has agreed in writing that, *at the request of the petitioners,* he will make himself available to testify 'in any domestic or foreign judicial or arbitral proceedings[.]'") (emphasis added). Here, in notable contrast, Respondents have not made any promise, let alone a written guarantee, to testify before the Swiss court, nor has Petitioner made that request as it would not only be inefficient but, more importantly, legally unenforceable by the Swiss court. Jeandin Decl., ¶40.

Likewise, Ms. Safra's contention that "the Swiss court could obtain testimony from the four doctors under the Hague Evidence Convention," (Dkt. 51 at 8), is inapposite. Whether the Hague Convention provides an alternative avenue to obtain testimony from Respondents is beside the point because the Second Circuit has long held that there is no quasi-exhaustion requirement

under § 1782. *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement" and holding that any such requirement would be "odds with the [statute's] twin purposes").[2]

To that end, Ms. Safra's suggestion that Petitioner, as a precondition to seeking discovery pursuant to § 1782, must first make a request to the Swiss court to employ the Hague Convention to obtain testimony from Respondents does not comport with the twin aims of § 1782. Indeed, courts have routinely held that a § 1782 applicant need not first use the Hague Convention. *See, e.g.*, *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 151 (2d Cir. 2022) (vacating and remanding on the ground that petitioner did not have to resort to discovery via mutual legal assistance treaty before filing 1782 application); *In re Kidd*, 2020 WL 5594122, at *7 (D. Conn. Sept. 18, 2020) (concluding magistrate judge did not err in declining to "require [§ 1782 applicant] to seek discovery through Letters of Request via the Hague Convention"); *In re O'Keeffe*, 2015 WL 5039723, at *3 ("[C]ourts have repeatedly found that Section 1782 applicants are not required to apply for letters rogatory through the forum nation before making a Section 1782 application.").[3]

Thus, the Court should weigh the first *Intel* factor in favor of granting the Application.[4]

---

[2] If anything, that the Hague Convention is in effect between the United States and Switzerland "indicates that [Switzerland's] courts are receptive to American judicial assistance." *In re App. of Kate O'Keeffe for Assistance Before a Foreign Tribunal*, 2015 WL 5039723, at *2 (D.N.J. Aug. 26, 2015), *aff'd sub nom. In re O'Keeffe*, 646 F. App'x 263 (3d Cir. 2016).

[3] Moreover, Ms. Safra's proposal is redundant as "[t]he Hague Convention, which governs letters rogatory, essentially imposes the same conditions as those in section 1782[.]" *In re Boras*, 153 F.R.D. 31, 35 (E.D.N.Y. 1994); *see also In re Berlamont*, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), *aff'd sub nom. Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456 (2d Cir. 2014); Jeandin Decl. ¶40.

[4] To the extent Ms. Safra argues that Petitioner's Application conceals an attempt to circumvent the Hague Convention, that argument is also foreclosed by Second Circuit authority. *See Fed. Rep. of Nigeria*, 27 F.4th at 157 (holding petitioner "d[id] not 'circumvent' any relevant

### 2.     *Intel* Factor 2: Swiss Courts will be Receptive to § 1782 Aid

In her Opposition, Ms. Safra contends that the deposition subpoenas should be denied because they will not be admissible in Switzerland. Dkt. 51 at 9. But Ms. Safra's contentions fall flat for two reasons.

*First,* as Ms. Safra concedes and as the Second Circuit has recognized, "Section 1782 does not require Petitioner to demonstrate that the discovery he seeks would be admissible in the contemplated Swiss proceeding." Dkt. 51 at 9; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (holding a district court "should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."). Ms. Safra attempts to distinguish *Brandi-Dohrn*'s clear holding on the basis that *Brandi-Dohrn* considered the lack of an admissibility requirement in the context of the "for use" statutory requirement, Dkt. 51 at 9 n.1, but that is a distinction without a difference. As this Court held in *In re Aso*, for purposes of the second *Intel* factor "the Court need not decide whether the [evidence] will be admissible in [the foreign jurisdiction] to be discoverable here—the decision on admissibility is better suited for the [foreign] courts." 2019 WL 2345443, at *6 (S.D.N.Y. June 3, 2019); *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) ("emphasiz[ing] that the availability of the discovery in the foreign proceeding should not be afforded undue weight").

*Second*, Ms. Safra fails to provide any authoritative proof that the Swiss Court would reject the § 1782 evidence. *See, e.g.*, *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) ("[A] district court's inquiry into the discoverability of requested materials should consider

---

restriction or policy within the meaning of *Intel* by filing an application under § 1782 when it could otherwise file an [treaty] request."). Moreover, as explained by Professor Jeandin, Article 27 of the Hague Convention permits the use of alternative discovery measures, such as Section 1782. *See* Jeandin Decl. ¶34.

only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782."). To the contrary, Petitioner can use the deposition testimony obtained under § 1782 in the Swiss Proceeding. *See* Jeandin Decl. ¶¶27-41. As explained by Professor Jeandin, "physical records, such as written transcripts, are admissible in Switzerland as far as they are legally relevant," *id.* ¶29, and because deposition transcripts are physical records, "[t]here is no prohibition in principle under Swiss law for using in Switzerland evidence collected in accordance with the type of discovery that is sought by the Petitioner via his 1782 Application." *Id.* ¶30.[5] The second *Intel* factor thus weighs in favor of discovery. *See*, *e.g.*, *Salt Mobile S.A. v. Liberty Glob. Inc.*, 2021 WL 2375864, at *4 (D. Colo. June 10, 2021) (granting § 1782 petition seeking deposition testimony for use in a contemplated Swiss proceeding); *In re Illumina Cambridge Ltd.*, 2019 WL 5811467, at *1 (N.D. Cal. Nov. 7, 2019) (allowing subpoenas to obtain documents and testimony, including U.S. deposition transcripts, for use in Swiss proceeding).[6]

### 3. *Intel* Factor 4: The Requested Discovery is not Unduly Intrusive or Burdensome

For purposes of the fourth *Intel* factor, courts apply the familiar standards of Rules 26 and 45 of the Federal Rules of Civil Procedure in evaluating the burdensomeness of § 1782 subpoenas.

---

[5] Of course, as this Court recognized in *In re Aso*, district courts should avoid undertaking "an extensive examination of foreign law" when presented with dueling expert declarations. 2019 WL 2345443, at *6. In these circumstances, the "Second Circuit has instructed that district courts generally should err on the side of permitting the requested discovery." *Id.*

[6] Moreover, Ms. Safra's position that any depositions should be deferred to the Swiss tribunal, is contrary to Congress's intent in enacting § 1782. Through § 1782, Congress has sought "to provide judicial assistance in gathering evidence for use in foreign tribunals." *Berlamont*, 773 F.3d at 460; *Malev Hungarian Airlines*, 964 F.2d at 100 (One of the twin aims of § 1782 is to provide "efficient means of assistance to participants in international litigation in [this country's] federal courts."). Ms. Safra's unworkable proposal is simply not an efficient mechanism for Petitioner to use to obtain discovery, let alone the specific discovery Petitioner seeks here from individuals and entities physically located in this District.

*In re YS GM Marfin II LLC*, 2022 WL 624291, at *4 (S.D.N.Y. Mar. 2, 2022). Under Rule 45 whether a subpoena imposes an "undue burden" depends on such factors as relevance, need, breadth, time period, burden, and particularity. *In re App. of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *10 (S.D.N.Y. Dec. 10, 2014), *aff'd Gorsoan Ltd. v. Bullock*, 632 Fed. App'x 7 (2d Cir. 2016).

Considering these factors, Petitioner's deposition requests are not unduly intrusive or burdensome for the following reasons:

- **Relevance and Need**: Petitioner's deposition subpoenas seek testimony from Respondents related to Mr. Safra's medical care and mental state. *See* Dkt 7-2 at 19. Mr. Safra's mental state at the time he executed the New Wills (and any other unknown wills or testamentary instruments by which he transferred part of his estate to his heirs other than the Petitioner) is the central issue in the Swiss Proceeding. *See, e.g.*, Jeandin Decl. ¶¶27-28; 39; Supp. Wilson Decl. ¶5.

- **Time-Period**: Since Mr. Safra passed away in December 2020, *see* Dkt. 5 ¶31, the subpoenas in effect encompass just a three-year period. Courts routinely issue § 1782 subpoenas covering even longer time periods. *See, e.g.*, *In re Aso*, 2019 WL 2345443, at *8 (granting §1782 petition for document and deposition subpoenas seeking information spanning 22 years).

- **Breadth and Particularity**: The subpoenas are narrowly tailored and specify the pertinent deposition topics. Those topics center around Respondents' knowledge and understanding of Mr. Safra's health and medical conditions, including his physical, neurological, psychological, neuropsychological, psychiatric, and neuropsychiatric conditions. *See* Dkt. 7-2 at 19.

- **Burden**: Ms. Safra faces no burden as she is not a target of the deposition subpoenas. Respondents, if ordered to sit for depositions, will face a minimal burden given the narrow and

targeted scope of Petitioner's subpoenas. Moreover, Petitioner will continue to meet and confer with Respondents in good faith to resolve any issues arising out of the subpoenas.[7]

Ms. Safra's contrary arguments that Petitioner's deposition subpoenas are unduly burdensome ring hollow.[8] Specifically, she claims, without any support, the Rule 30(b)(6) depositions of the hospitals are unnecessary and burdensome "because the two hospitals cannot provide testimony concerning Mr. Safra's health beyond the medical records they maintain." Dkt. 51 at 7. Not so. Rather, it is likely that the hospital-Respondents have information beyond what the physician-Respondents know, including information about additional treatments or therapies that Mr. Safra may have undergone (including potentially from other doctors or clinicians) beyond those performed by the physician-Respondents. Wendler Decl. ¶¶19-21. Because such information will shed further light into Mr. Safra's medical condition, the hospital-Respondents are proper subjects for Rule 30(b)(6) depositions.

As to the document subpoenas, Petitioner and Respondents have met and conferred and Respondents have agreed to produce responsive documents subject to Petitioner covering production costs, which he will. *See* Dkt. 50 at 1. Yet despite this agreement, Ms. Safra, who faces no personal burden to comply with Petitioner's proposed subpoenas, raises a single dispute with respect to the subpoenas' request for documents over a three-year time-period. Dkt. 51 at 10-

---

[7] To the extent there is any disagreement with Respondents with respect to the duration of the depositions, counsel for Petitioner is willing to work with Respondents to ensure that the duration is reasonable. Based on existing discussions with Respondents' counsel, Petitioner is very optimistic that he and Respondents will reach an acceptable arrangement.

[8] Ms. Safra also suggests that Petitioner's requested discovery is unduly burdensome because deposition transcripts are inadmissible in the Swiss Proceeding. This argument is without merit. *See supra*, at 5.

12. Setting aside whether Ms. Safra has any basis to complain about the burden of Petitioner's document subpoenas, her arguments that the subpoenas are impermissibly broad is without merit.

Mr. Safra's medical records from 2018 are plainly relevant to evaluating his mental condition in late 2019. In 2018, doctors first began treating Mr. Safra for various ailments and conditions bearing on his mental capacity. Wendler Decl. ¶16.[9] That Ms. Safra suggests these facts have no relevance to Mr. Safra's mental condition in late 2019 simply belies common sense, let alone the reasoned opinions of actual medical professionals.

Dr. Sheila Wendler is one such medical professional, and she explains in detail that Mr. Safra's medical records from 2018 are directly relevant to assessing Mr. Safra's mental condition at the time he executed the New Wills. Specifically, Dr. Wendler explains that "it is critical to understand the clinical course of Mr. Safra's illnesses and their effects on his neurocognitive status" because such understanding "then informs a more comprehensive understanding of his level of premorbid functioning, as well as the specific impacts of his brain cancer and other medical conditions on his mental functioning over time. This dispute raises issues about the changes in Mr. Safra's mental status between the time he executed the Original Wills and the New Wills—a time period which includes 2018." *Id.* ¶¶11-12.

Dr. Wendler similarly explains that Mr. Safra's medical records from 2020 will be instrumental in understanding Mr. Safra's mental condition in late 2019. Specifically, medical records from 2020 will aid in "[u]nderstanding the subsequent development of Mr. Safra's neurological symptoms" which in turn will "shed[] light on the medical conditions from which he suffered at the time he signed the New Wills." *Id.* ¶17. Indeed, "it would be difficult for a court,

---

[9] Petitioner has omitted the details of Mr. Safra's ailments from this brief as it relates to material that was filed in redacted form in this case. *See, e.g.*, Dkt. 2 at 9-13; Dkt. 5 ¶¶10, 13-21, 23-27.

medical examiner, or medical expert to fully evaluate a testator or patient's mental status without a comprehensive history of the medical conditions affecting the patient's mental state before, during, and after the impugned transactions or documents were entered into or executed." *Id.* ¶18.[10]

Ultimately, Ms. Safra offers no support for her contentions that Mr. Safra's medical records from 2018 and 2020 are irrelevant or that Respondents will be unduly burdened by Petitioner's request for three years of medical documents.[11] Accordingly, the Court should weigh the fourth *Intel* factor in Petitioner's favor. *See, e.g.*, *In re Mariani*, 2020 WL 1887855, at *2 (S.D.N.Y. Apr. 16, 2020) (granting § 1782 application and holding document subpoena requesting information spanning 8 years was "neither burdensome nor intrusive").

### III. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant his § 1782 Application and authorize Petitioner to serve the Subpoenas on Respondents.

---

[10] Further, documents from 2018 and 2020 are also relevant to determine Mr. Safra's mental capacity with respect to any other will or testamentary instrument executed during this period. Supp. Wilson Decl., ¶5.

[11] Unsurprisingly, the few cases Ms. Safra cites (Dkt. 51 at 11) as examples of unduly burdensome § 1782 subpoenas have virtually no resemblance to the document subpoenas at issue here. In *Promnefstroy* and *Baltic Soul*, the subpoenas at issue requested huge volumes of complex financial and business records from multiple entities such as large international banks and large foreign corporations. *See In re App. of OOO Promnefstroy*, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (the "application extend[ed] to a wide array of documents related to tens of business entities and to all of their affairs"); *In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, 2015 WL 5824505, at *2-3 (S.D.N.Y. Oct. 6, 2015) (subpoenas "request[ed] for disclosure of every financial transaction" between seven different business entities and 11 different large, international banks). Similarly, the subpoenas at issue in *Gushlak* requested every document related to an adversary in a foreign proceeding "without any time limitation." 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011). In contrast Petitioner's document subpoenas seek a relatively small number of documents over a discrete time period related to the single issue of Mr. Safra's health and mental conditions. *See* Dkt. 7-2.

| | |
|---|---|
| Dated: May 9, 2022 | Respectfully submitted,<br><br>/s/ *Michael Carlinsky*<br>_____<br><br>Michael Carlinsky<br>Lucas V.M. Bento<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, Floor 22<br>New York, NY 10010<br>Telephone: (212) 849-7000<br>Facsimile: (212) 849-7100<br>michaelcarlinsky@quinnemanuel.com<br>lucasbento@quinnemanuel.com<br><br>Gavin Frisch<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>111 Huntington Avenue, Suite 520<br>Boston, MA 02199<br>Telephone: (617) 712-7100<br>Facsimile: (617) 712-7200<br>gavinfrisch@quinnemanuel.com<br><br>*Attorneys for Petitioner* |

- 11 -