USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   8/22/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
IN RE APPLICATION OF ALBERTO           :
SAFRA FOR AN ORDER TO TAKE             :
DISCOVERY FOR USE IN FOREIGN           :      **OPINION AND ORDER**
PROCEEDINGS PURSUANT TO                :
28 U.S.C. § 1782                       :      21-MC-640 (GHW) (JLC)
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Alberto Safra ("Alberto") has applied for an order to obtain discovery for use

in a foreign proceeding pursuant to 28 U.S.C. § 1782 ("Section 1782"). Alberto

requests leave to serve subpoenas on Dr. Susan Bressman, Dr. Eli L. Diamond, Dr.

Valentin Fuster, Dr. Viviane Tabar, Mount Sinai Health System ("Mount Sinai"),

and Memorial Sloan Kettering Cancer Center ("MSKCC" and together with Drs.

Bressman, Diamond, Fuster, and Tabar, and Mount Sinai, the "Respondents").

Alberto seeks medical records and deposition testimony to be used in Swiss

testamentary proceedings contesting two wills executed by the late Joseph Yacoub

Safra ("Joseph"), Alberto's father. Respondents have not opposed the request, but

Alberto's mother and Joseph's wife, Vicky Safra ("Vicky"), opposes his application.

For the reasons set forth below, Alberto's application is granted.[1]

---

[1] Given the multiple members of the Safra Family who are identified in this
Opinion, the Court will use their first names to distinguish them for ease of
reference.

# I.   BACKGROUND

## A.   Procedural History

On August 5, 2021, Alberto filed an *ex parte* application in this Court, seeking an order pursuant to Section 1782 to conduct discovery for use in the testamentary proceedings he is pursuing in Switzerland.  *See* Application of Alberto Safra for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 ("Application"), Dkt. No. 1; Memorandum of Law ("Pet. Mem."), Dkt. No. 2. Along with his memorandum of law, Alberto filed the following declarations: the Declaration of Alberto Safra ("Safra Decl."), dated August 5, 2021, with Exhibits 1–8, Dkt. No. 5; the Declaration of David Wallace Wilson ("Wilson Decl."), dated August 5, 2021, with Exhibits 1–6, Dkt. No. 6; and the Declaration of Lucas Bento ("Bento Decl."), dated August 5, 2021, with Exhibits 1–14.

On August 31, 2021, Vicky moved to intervene, as executor and administrator of Joseph's estate.  Motion to Intervene, Dkt. No. 18; Memorandum of Law in Support of Vicky Safra's Motion to Intervene, Dkt. No. 19.  Alberto responded on September 3, 2021, consenting to Vicky's intervention.  Petitioner's Response to Vicky Safra's Motion to Intervene, Dkt. No. 22.  On September 6, 2021, Judge Woods granted Vicky's motion to intervene.  Dkt. No. 23.

After several extensions, Respondents filed their response on April 25, 2022. Response to Motion for Discovery ("Resp. Brief"), Dkt. No. 50.  Also on April 25, 2022, Vicky filed papers opposing Alberto's Application.  Memorandum of Law in Opposition ("Opp."), Dkt. No. 51.  Along with her opposition papers, Vicky filed the Declaration of Prof. Dr. Denis Piotet ("Piotet Decl."), dated September 24, 2021.

Dkt. No. 52.  Alberto filed reply papers on May 9, 2022.  Reply Memorandum of Law

("Pet. Reply"), Dkt. No. 54.  With his reply papers, Alberto filed three declarations:

the Declaration of David Wallace Wilson ("Second Wilson Decl."), dated May 9,

2022, Dkt. No. 55; the Declaration of Professor Nicolas Jeandin ("Jeandin Decl."),

dated May 9, 2022, Dkt. No. 56; and the Declaration of Dr. Sheila Wendler

("Wendler Decl."), dated May 9, 2022, Dkt. No. 57.  On May 24, 2022, Vicky moved

for leave to file a sur-reply ("Sur-reply"), attaching her proposed sur-reply.  Dkt. No.

59.  With that motion, she also filed the Declaration of Matthew J. Porpora

("Porpora Decl."), dated May 24, 2022.  Dkt. No. 60.  On May 25, 2022, Alberto filed

a letter opposing Vicky's motion for leave to file a sur-reply.  Dkt. No. 62.[2]

By Order dated November 23, 2021, Judge Woods referred the Application to

me for resolution.  *See* Dkt. No. 37.  I have authority to decide Alberto's request for

discovery under Section 1782 as it is a non-dispositive matter.  *See*, *e.g.*, *In re Hulley*

---

[2] Sur-replies are not permitted without court authorization.  *See, e.g., Kapiti v. Kelly,* No. 07-CV-3782 (RMB) (KNF), 2008 WL 754686, at *1, n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit sur-replies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs.") (citation and quotation marks omitted).  Vicky argues that she should be afforded the opportunity to respond to Alberto's reply, and to certain statements in the Jeandin Declaration, as she contends that they are "new arguments."  Sur-reply at 1. However, Alberto's reply and the accompanying Jeandin Declaration merely respond to the arguments advanced in Vicky's opposition memorandum.  The only new argument, an allegation that Alberto will use the discovery he seeks from Respondents in a private arbitration taking place in the United Kingdom, was raised not by Alberto in his reply, but by Vicky, in her sur-reply.  Thus, the motion to file a sur-reply is denied.  Even if the Court were to consider the sur-reply, it does not present new information that would change the decision to grant Alberto's Application.

*Enters., Ltd.*, 358 F. Supp. 3d 331, 341–42 (S.D.N.Y. 2019) (application brought under Section 1782 is "non-dispositive" matter within meaning of Fed. R. Civ. P. 72(b)).

## B.   Factual Background

Alberto seeks discovery from Respondents to use in testamentary proceedings in Switzerland contesting two wills his late father executed in November and December 2019, which excluded Alberto from inheritance.  Pet. Mem. at 1–2. Alberto seeks to invalidate those two wills by presenting medical evidence that his father's "health and neurological ailments in late 2019 deprived him of the testamentary capacity to execute the [wills] and/or left him vulnerable to undue influence."  *Id.* at 3.  On May 3, 2022, Alberto initiated litigation in Switzerland against the heirs to Joseph's estate.  Second Wilson Decl. ¶5.

Respondents have taken no position regarding Alberto's request; they only seek to "minimize the burden and expense" of discovery.  Resp. Brief at 2.  Their counsel have met with Alberto's counsel to come to an agreement on the scope of documents requested; however, at the time of the filing of Alberto's Application, they had yet to agree on the number, duration, and scope of the requested depositions.  *Id.*

Vicky makes two arguments in opposing Alberto's request.  First, she argues that the Court should deny the request to depose Respondents because any deposition testimony taken in the United States will be inadmissible as witness evidence in the Swiss proceeding and will be separately attainable directly through the Swiss proceeding.  Opp. at 8–9.  Second, she argues that the Court should

narrow Alberto's document request to cover only documents relating to Joseph's mental condition in 2019, and not any other medical records for the years 2018 through 2020, as Alberto has requested. *Id.* at 11–12.

## II.   DISCUSSION

### A. Legal Standards

Under 28 U.S.C. § 1782,

> [t]he district court in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . [t]he order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).  Accordingly, a district court has jurisdiction to grant an application under Section 1782 if the following statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up); *see also In re Application of Microsoft Corp.*, 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing *Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

If the statutory requirements are met, a district court, in its discretion, may grant the application. *Kiobel*, 895 F.3d at 244.  The Supreme Court has identified four discretionary factors (referred to below as the *Intel* factors) a district court may

consider when ruling on a Section 1782 request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).  Courts must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 252 (citation omitted).

### B. Section 1782 Statutory Elements

The statutory elements of Section 1782 have been satisfied and they are not in dispute.  Each element is thus only briefly addressed in turn below.

#### 1. Residency Requirement

Section 1782 provides that "[t]he district court of the district in which a person resides or is found," may order discovery to be taken from that person.  28 U.S.C. § 1782(a).  Based on the record, Respondents are found in the Southern District of New York.  *See* Bento Decl., Exhs. 3–10.

### 2.  For Use in a Foreign or International Tribunal

The Court next considers whether the judicial assistance sought by Alberto satisfies the requirement "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  Alberto asserts that the discovery will be used in civil proceedings in Switzerland, with the *Juge de Commune de Crans-Montana*, in which he seeks to invalidate the two wills in question.  *See* Pet. Mem. at 18–19; Second Wilson Decl. ¶5.  Accordingly, the evidence sought through this Section 1782 application is "for use" in proceedings in a Swiss Court, which qualifies as a "proceeding in a foreign . . . tribunal." *Intel*, 542 U.S. at 257–58.  Thus, the evidence sought by Alberto is "for use" in a proceeding before a foreign tribunal.

### 3.  Interested Person

Finally, the Court reviews whether Alberto is an "interested person" within the meaning of the statute.  Section 1782 provides that the district court may issue an order for discovery "upon the application of any interested person."  28 U.S.C. § 1782(a).  In *Intel*, the Supreme Court provided that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke [Section] 1782." 542 U.S. at 256 (citation omitted).

In this case, Alberto meets the "any interested person" standard of Section 1782 because he is a party in the testamentary proceedings pending before the Swiss court.  Jeandin Decl. ¶11.  Alberto thus has a significant interest in obtaining judicial assistance and satisfies this element as well.

### C. Section 1782 Discretionary Factors

A district court is not required to grant a Section 1782 application simply because it has the authority to do so.  *See Intel*, 542 U.S. at 264.  Rather, once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. *See id.*  If the district court permits discovery under Section 1782, it "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country," for taking testimony or producing documents.  28 U.S.C § 1782(a).  In addition, the district court should consider the statute's "twin aims" discussed *supra* at 6.

Applying the four *Intel* factors to this case, the Court concludes that Alberto's application should be granted.

### 1. Jurisdictional Reach of Foreign Tribunal

The first *Intel* factor provides:

> when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.  A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence.  In contrast, nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Intel*, 542 U.S. at 264.  Here, the material sought by subpoena might not be accessible by means other than Section 1782, because none of the subpoena targets is a party to the proceeding in Switzerland and thus may not be within the Swiss

court's jurisdictional reach.  Wilson Decl. ¶37.  This factor favors allowing Alberto to obtain the discovery he seeks.

Vicky argues that this factor weighs against allowing Alberto to obtain the discovery because "Swiss courts routinely seek voluntary testimony from witnesses located outside Switzerland," and if Respondents refuse to testify voluntarily, they could be compelled to do so under the Hague Convention.  Opp. at 8; Piotet Decl. ¶26.  Whether Respondents may be asked or compelled to testify by the Swiss court, however, is not relevant to the pending Application, and appears to function as a "quasi-exhaustion" requirement, which the Second Circuit has held does not exist for an application pursuant to Section 1782.  *See In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).[3]

In addition, Vicky argues that each Respondent could be considered a "participant," Opp. at 7, in which case the first *Intel* factor provides that "the need for [Section] 1782(a) aid generally is not as apparent."  *Intel*, 542 U.S. at 264.  Vicky contends that courts have not clearly defined "participant," and the term could

---

[3] In the Porpora Declaration attached to Vicky's sur-reply, her counsel reports that he spoke by telephone with Respondents' counsel and came to an agreement whereby Respondents will "negotiate in good faith" to provide testimony directly in the Swiss proceeding "via video or other remote means" but only on the condition that they not be "required to sit for deposition now" and also not required to travel to Switzerland to testify in person at the Swiss proceeding.  Porpora Decl. ¶5. Because the Porpora Declaration is attached to the Sur-reply, which the Court is disregarding on this Application, I will not consider for this apparent arrangement. However, as a practical matter, given that both Alberto and Respondents have stated that they are in communication with each other, *see* Resp. Brief at 2, Pet. Reply at 8, n.7, Vicky's counsel's telephone call with Respondents' counsel is of little significance in any event.

mean "anyone who might appear before the foreign tribunal as a witness." Opp. at 7. In support of this proposition, she cites to *In re Application of the Coal. to Protect Clifton Bay, Louis Bacon for an Ord. Pursuant to 28 U.S.C. Section 1782 to Conduct Discovery for use in Foreign Proc.*, No. 14-MC-258 (DLC), 2014 WL 5454823, at *3 (S.D.N.Y. Oct. 28, 2014) ("*Clifton Bay*"). However, *Clifton Bay*, as Alberto points out, is distinguishable because the nonparty witness in that case agreed in writing to testify in the foreign proceeding. *Id.* Here, Respondents have not agreed in writing to testify.[4] Even if *Clifton Bay* were analogous, in that case, with regard to the first *Intel* factor, the court stated that while the respondent might be considered a participant in the proceeding, "[the] factor does not weigh so strongly as to end the analysis." *Id.* The same is true here.

## 2. Nature and Receptivity of Foreign Tribunal

The second *Intel* factor provides that a district court ruling on a Section 1782 application may consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. However, a district court's production-order authority is not limited only to "materials that could be discovered in the foreign jurisdiction if the materials were located there." *Id.* at 260. Absent objection to U.S. federal-court judicial assistance, such a categorical restriction would undermine Section 1782's objective to assist

---

[4] Notably, the telephone conversation between Vicky's counsel and Respondents' counsel is not memorialized in a written agreement that is in the record before the Court.

foreign tribunals in obtaining relevant information that is unavailable under their own laws. *Id.* at 261–62. Further, objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the Swiss government. *See Schmitz*, 376 F.3d at 84 (district court denied discovery request where German Ministry of Justice and local German prosecutor explicitly asked district court to deny it).

Alberto posits—and his Swiss counsel corroborates—that "Swiss courts will be receptive to evidence obtained through [the] Application," and that Alberto "will have the opportunity to use the information obtained in this Application in advancing and proving his claims." Pet. Mem. at 28; Wilson Decl. ¶¶40–41. In addition, in his declaration, Professor Jeandin states that under Swiss law, the deposition transcripts could be considered physical records, and if the Swiss court determines they are legally relevant, they will be admissible. Jeandin Decl. ¶¶29–30. Accordingly, it appears that the Swiss tribunal is likely to be receptive to this discovery. In response, Vicky directs the Court's attention to the fact that in Swiss proceedings, witnesses are examined directly by the court, not by attorneys, so the testimony from a U.S. deposition will not be admissible. Opp. at 9, Piotet Decl. ¶¶21–22. In light of this fact, Vicky argues, asking the doctors to sit for depositions in the United States would be unduly burdensome. Opp. at 9, n.1.

The Court need not decide whether the discovery will be admissible in Switzerland to be discoverable here, as that is a decision for the Swiss courts. *See, e.g., Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir.

2012) ("requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger'") (internal citations omitted).  The Second Circuit has made clear that district courts should avoid undertaking "an extensive examination of foreign law" that would likely lead to a "superficial" ruling based on "a battle-by-affidavit of international legal experts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995).  Courts should only find that the requested discovery would be rejected in the foreign proceeding if the opponent of the Section 1782 application presents "authoritative proof . . . that specifically address the use of evidence gathered under foreign procedures."  *Id.* at 1100.  Authoritative proof consists of the "forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures."  *Id.*; *see also Schmitz*, 376 F.3d at 84.

By contrast, proof resting on equivocal interpretations of foreign policy or law generally provides an insufficient basis to deny discovery.  *See, e.g., In re Application of Grupo Qumma,* No. M8-85 (DC), 2005 WL 937486, at * 3 (S.D.N.Y. Apr. 22, 2005) (granting Section 1782 discovery application where foreign court's receptiveness to discovery was in dispute).  Rather, in such cases the Second Circuit has instructed that district courts generally should err on the side of permitting the requested discovery.  *See Euromepa,* 51 F.3d at 1101.  Such a liberal construction owes to the availability of corrective measures abroad; for example, the foreign tribunal may simply choose to exclude or disregard the discovered material should

that tribunal find that the district court overstepped its bounds in ordering the discovery.  *See id.*; *Grupo Qumma,* 2005 WL 937486, at *3.

Here, Vicky relies on the declaration of Prof. Dr. Piotet to argue that the discovery Alberto requests would not be used in the Swiss proceeding and so the doctors will be forced to sit for depositions a second time following Swiss procedure. Opp. at 3.  Prof. Dr. Piotet's Declaration does not meet the standard of "authoritative proof" as laid out in *Euromepa* because it is not a declaration issued by the Swiss judicial, executive, or legislative branch.  Thus, the Court cannot say definitively that Swiss courts will reject the discovery and that the doctors will have to sit for depositions again.  51 F.3d at 1101; *see also In re Ex Parte Application of Porsche Automobil Holding SE for an Ord. Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 15-MC-417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016) ("District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals that they would reject Section 1782 assistance.") (citation and quotation marks omitted).  Further, the Court cannot determine with certainty whether the Swiss court will have the power to compel the doctors to participate in the Swiss proceeding if they choose not to cooperate.  Accordingly, the second factor weighs in Alberto's favor.

### 3. Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies

The third *Intel* factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264–65.  However, Section 1782 "contains no foreign-

discoverability requirement." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015). As discussed above, "nothing in the text of [Section] 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there." *Intel*, 542 U.S. at 260. In her opposition to Alberto's Application, Vicky does not argue that this factor weighs against granting Alberto's request.[5] In addition, nothing in the record exists to establish that Swiss law or policy prohibits this type of discovery such that Alberto is making his application in an attempt to circumvent Swiss law. Wilson Decl. ¶41. Perhaps the deposition testimony will not be admissible in the Swiss proceeding as "witness evidence," as Vicky suggests; however, it might be admissible as "physical records." Jeandin Decl. ¶30. As discussed above, it is not the place of this Court to analyze Swiss law to consider the potential admissibility of the discovery in the absence of some authoritative proof that it will not be allowed. Further, Section 1782 does not contain an exhaustion requirement that would impose upon an applicant a duty to first seek the requested discovery from the foreign court. *See, e.g., Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). The fact that Alberto requested relief under Section 1782 without first seeking relief in Switzerland therefore does not suggest that in doing so, Alberto was attempting to

---

[5] In her sur-reply, Vicky alleges that Alberto seeks this discovery for use in a private arbitration proceeding he commenced in the United Kingdom, and is using the Swiss proceeding as a pretense, because Section 1782 does not allow discovery for use in a private arbitration. Sur-reply at 4–5; Porpora Decl. ¶4. Even if the sur-reply were allowed, Vicky has provided no evidence to support her allegation that she believes Alberto is going to use the discovery collected from this application in his arbitration; this allegation appears to be mere speculation.

circumvent the rules of the foreign tribunal.  Accordingly, this factor favors granting discovery.

### 4. Unduly Intrusive or Burdensome Request

The final *Intel* factor directs courts to be mindful of overly intrusive or burdensome discovery requests.  *Intel*, 542 U.S. at 264–65.  "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302. Furthermore, the Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Euromepa*, 51 F.3d at 1101; *see also Malev*, 964 F.2d at 102 (Section 1782 and Federal Rule of Civil Procedure 26 furnish district courts with broad discretion to impose reasonable limitations upon discovery).

Vicky opposes Alberto's request to depose Respondents, arguing it is burdensome because the testimony might not be admissible in the Swiss proceedings.  Opp. at 10.  As discussed above, this argument has no merit given the lack of authoritative proof that the testimony will not be admissible and moreover, it is not the Court's role to decide what is admissible in Swiss courts.  Vicky further argues, without support, that the hospital Respondents will not be able to provide testimony regarding information outside of the medical records they maintain.  *Id.*

at 7.  Alberto responds that the hospital Respondents may be able to provide information beyond what the doctors know, "including information about additional treatments or therapies that [J. Safra] may have undergone."  Pet. Reply at 8.  As such, the requests to depose Respondents do not appear to be unduly burdensome (nor do Respondents themselves advance such an argument).

While she does not oppose the document requests for medical records that bear on Joseph's mental condition in 2019, Vicky opposes Alberto's request as overbroad and unduly burdensome because it requests medical records for 2018 through 2020, even though Alberto is only contesting wills from November and December of 2019.  Opp. at 10.  Vicky explains that "if the question is [Joseph's] mental capacity on three days in November and December 2019 when he executed the challenged wills, then [Alberto] does not need medical records from 2018 through 2020."  *Id.* at 12.  However, Vicky provides no support for this argument.  Alberto maintains that the documents from the three-year period are relevant because doctors started treating Joseph for his mental ailments in 2018 and obtaining records through 2020 will provide greater context as to Joseph's mental condition at the end of 2019, when he executed the wills in question.  Pet. Reply at 9.  In support of his position, Alberto has included the declaration of Dr. Sheila Wendler, who explains that the medical records from 2018 through 2020 are "directly relevant to assessing [Joseph's] mental condition at the time he executed" the new wills.  Wendler Decl. ¶¶16–17.

16

Notably, Respondents have not objected to the document requests. Resp. Brief. at 2. Therefore, while it does not appear that the requests are overbroad or burdensome, it is of no moment because Respondents, the targets of the request, have not opposed them.

As Section 1782 provides that discovery conducted pursuant to the statute must comply with the Federal Rules of Civil Procedure unless otherwise directed by the Court, and Alberto's proposed subpoenas provide the text of Rule 45(c)–(d), the Court is persuaded that the discovery sought will further the "twin aims" of the statute while encouraging a targeted approach.

### 5.    Summary

In sum, the *Intel* factors weigh in favor of granting Alberto's application. If Respondents seek to narrow the scope and number of the requested depositions, they may do so through a meet-and-confer with Alberto's counsel. There is nothing in the record to suggest counsel will not be able to come to an agreement on their own.

### III.    CONCLUSION

For the foregoing reasons, Alberto's Application pursuant to section 1782 is granted. Alberto is hereby authorized to serve the subpoenas annexed as Exhibit 2 to the declaration of Lucas Bento upon Respondents Drs. Tabar, Diamond, Fuster, Bressman, Mount Sinai Health System, and Memorial Sloan Kettering Cancer. All discovery produced by Respondents is subject to the entry of an appropriate protective order, given the sensitive nature of the discovery that is the subject of the subpoenas.

The Clerk is respectfully directed to close Docket No. 1 and mark it as "granted," and to close the letter-motion at Docket No. 59 and mark it as "denied."

**SO ORDERED.**

Dated: August 22, 2022
      New York, New York

JAMES L. COTT
United States Magistrate Judge