NEO8SAFC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

IN RE APPLICATION OF
ALBERTO SAFRA                              21 MC 640 (GHW)(JLC)

------------------------------x

                                           New York, N.Y.
                                           March 24, 2023
                                           2:40 p.m.

Before:

             HON. JAMES L. COTT,

                          Magistrate Judge

                     APPEARANCES

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Petitioner
BY:  KEVIN S. REED
     LUCAS BENTO

SULLIVAN & CROMWELL LLP
     Attorneys for Intervenor Vicky Safra
BY:  MATTHEW J. PORPORA
     KARL L. BOCK

MOUNT SINAI HEALTH SYSTEM
OFFICE OF THE GENERAL COUNSEL
BY:  ERICA D. LIU
     Assistant General Counsel

BARNES & THORNBURG LLP
     Attorneys for Respondents Memorial Sloan Kettering
       Cancer Center, Eli L. Diamond, Viviane Tabar
BY:  JOSEPH A. MATTEO

1          (In open court; case called)

2          THE DEPUTY CLERK:  Would counsel state your name for
3  the record.

4          MR. REED:  Good afternoon, your Honor.  Kevin Reed,
5  from Quinn Emanuel, here with my colleague Lucas Bento.

6          THE COURT:  Good afternoon.

7          MR. PORPORA:  Good afternoon, your Honor.  Matthew
8  Porpora, of Sullivan & Cromwell, on behalf of Vicky Safra, in
9  her capacity as executor and administrator of the estate of
10 Joseph Safra.  And I am here with my colleague Karl Bock.

11         THE COURT:  Good afternoon.

12         MS. LIU:  Good afternoon, your Honor.  Erica Liu, on
13 behalf of respondents Mount Sinai Health System, Dr. Valentin
14 Fuster, and Dr. Susan Bressman.

15         THE COURT:  Good afternoon.

16         MR. MATTEO:  Good afternoon, your Honor.  Joseph
17 Matteo, from Barnes & Thornburg, on behalf of Memorial Sloan
18 Kettering and Drs. Diamond and Tabar.

19         THE COURT:  Good afternoon.

20         So this is an odd proceeding we are having here today.
21 I have this case for a limited purpose.  I granted relief to
22 the petitioner and ordered the depositions of these doctors.
23 The petitioner now wants to take the depositions, but people
24 apparently can agree on one thing, it shouldn't happen more
25 than once, but you can't figure out how to make that happen

1    among yourselves.  And even in a week since I issued my order,
2    you haven't worked it out because here you are.
3             Is that right, or have you worked it out?
4             MR. REED:  Your Honor, that's correct.
5             THE COURT:  So, can I ask, how do I have any authority
6    beyond just ordering that the depositions that were sought in
7    the letters rogatory take place and whether they take place
8    more than one time in another court or not is beyond the
9    jurisdiction of the Southern District of New York?
10            MR. REED:  I don't know that we actually need to get
11   to that question.  I hope not to take up the Court's time
12   today.  I am sort of dismayed we are doing this.
13            After the guidance your Honor issued last week, the
14   hospitals dropped their position that they would only produce
15   their witnesses for a single deposition to be used in both the
16   1782 proceeding and in the state proceedings.  As of yesterday,
17   we had agreed on dates in April for three of the four
18   witnesses.  And Mr. Matteo has told me he will get me a date
19   for the remaining witness either later today or next week
20   sometime.  So from our perspective, there is really nothing for
21   the Court to do.
22            THE COURT:  Why are we here?
23            MR. REED:  We are here because the intervenor, Ms.
24   Safra, is insisting that before we proceed with these
25   depositions that Mr. Safra, my client, waive his right to make

a motion to modify the protective order until the motions to dismiss in the state case have been decided.

Now, as I explained to counsel for the intervenor yesterday, I don't currently have any intention to make such a motion. I agree that the most likely time that we would make such a motion would be after the motions to dismiss in the state case are decided. But I don't know what the future holds. I don't know whether circumstances will change or it will arise where I might want to make a motion at some earlier point in time. And so I can't in good conscience waive the right to do so. Of course, if I do, it will be presented to your Honor and presumably you will decide it on the basis of the facts that exist at that time.

THE COURT: We are talking about modifying a protective order that was entered in this case to the effect, essentially, that the depositions that are proceeding for the Swiss proceeding could then be used potentially in the New York proceeding, and that would be the modification?

MR. REED: Exactly right.

THE COURT: And your point is, you don't know whether you can agree to that until the New York case moves further along.

MR. REED: My point more generally is I don't know what is going to happen in a month or a week or three months from now. I always should have the right to make a motion, and

your Honor can then decide it if I make it.  But the notion that I should have to give up my right to even make a motion as a condition of taking the depositions that your Honor has already ordered to move forward seems wrong.

The hospitals have agreed to produce their witnesses. We have agreed dates.  If and when we decide to make a motion to modify the protective order, to allow us to use those depositions in some other place or context, we will consult with the other parties.  If we can't resolve it, we will make that motion.  I don't know whether that will ever happen, but it's not an issue that should hang us up today.  We should just take the depositions that all the parties have agreed should go forward in April and be done.  I am not quite sure why we are bothering the Court with this.

THE COURT:  Why are you bothering me with this today?

MR. PORPORA:  So I am equally dismayed in having to bother the Court, your Honor.  What happened here was the parties met and conferred this past Wednesday after your Honor's guidance.  I think your Honor proposed the most sensible way forward, which was to proceed with the depositions, and in your Honor's words, "To proceed with the depositions now, for purposes of the Swiss proceeding, and then, if the New York action is not dismissed and discovery proceeds there, the parties can evaluate at that stage of those proceedings whether they can in fact stipulate to using the

1    1782 depositions in the state court action and modify the
2    protective order as necessary."
3            In other words, your Honor, I don't think -- and
4    obviously counsel for the hospitals and the doctors can speak
5    on their own behalf, but I think it's an oversimplification to
6    say that they have stepped away from their desire to have their
7    doctors testify only once.  I think they want that to happen,
8    and I think that both the plaintiff and the intervenor share in
9    that desire.  The problem was, how do we make that happen?  And
10   your Honor proposed this way forward, which made sense.  But
11   it's predicated on the idea that the depositions will be used
12   for the purpose for which they were granted, for the Swiss
13   proceeding.
14           And as your Honor says, take those depositions now.
15   If later on the New York action proceeds to discovery, the
16   motions to dismissed are decided, at that time, the plaintiff
17   can go forward and try to negotiate some type of deal where
18   that testimony can also be used in the New York case.  And that
19   would be sensible.
20           So all we said on the meet-and-confer call was, let's
21   get agreement to follow Judge Cott's prescribed way forward, or
22   suggested way forward.  And what I heard was, well, we agree
23   that if we made a motion earlier than a time when discovery is
24   proceeding in New York, it's likely to fail, but I am not going
25   to agree to not make that motion.

1           THE COURT:  I like quoting a judge for whom I clerked,
2    who used to say often, "Don't trouble trouble until trouble
3    troubles you."  An expression maybe some of you have heard.
4    Isn't this troubling trouble unnecessarily?  Let's say you're
5    going to make a motion to dismiss in the state court proceeding
6    and it's granted.  Then the next thing that happens is an
7    appeal, not anything else, right?  So why do we have to worry
8    about modifying a protective order here if you're successful
9    there?  So why do you need Mr. Reed to agree one way or the
10   other?  If you're successful, then that's academic.
11           MR. PORPORA:  That's right, your Honor.  But that's
12   not the hypothetical I am concerned about.
13           THE COURT:  What is the hypothetical you're concerned
14   about?
15           MR. PORPORA:  What I am concerned about is Mr. Reed
16   takes the depositions in April, as they have been scheduled,
17   and immediately thereafter comes to the Court and makes a
18   motion to modify the protective order.
19           THE COURT:  You're going to oppose, and I am going to
20   say it seems premature until the New York state case runs its
21   course.  And, by the way, where are the other people in the New
22   York state court case who are not even here, so how can I -- to
23   my first question -- even adjudicate this?  So I don't know why
24   we would deal with it in that posture at all.
25           MR. PORPORA:  I agree with you, your Honor, but a

1    couple of things.  Number one, I don't want to defer trouble to
2    another day.  We didn't ask for this conference, your Honor.
3    We were trying to work this out with the parties.  The
4    plaintiff is the one who asked for this conference.  And the
5    direction to go forward I think was quite clear, that we agreed
6    to do this for purposes of the Swiss action.  Now, you're
7    right, of course, that if Mr. Reed makes a motion, we can
8    oppose it.  But we have no interest in having to deal with that
9    type of vexatious litigation.
10           THE COURT:  He has just represented he is not at the
11   present time inclined to make the motion.  So as an officer of
12   the court, I accept that as the fact that it's unlikely we are
13   going to have to reconvene to deal with any of this, at least
14   in the short-term.
15           As he says, the future is unpredictable, but I think
16   what that may mean, in the context of all of this, is the New
17   York state court case has to play itself out a certain way for
18   Mr. Reed to decide what needs to happen, if anything.  And
19   also, to the doctors' point, I mean, there is, from their
20   perspective, I think a finite amount of things they can testify
21   to.  That is going to be true no matter what.  And so once that
22   actually is on the record, everyone might just see it as such,
23   and then you can consensually agree at the right time, whenever
24   that is, to use it in the state court case, if it needs to be
25   used, which it may or may not be.

1          So I am not sure what I am being asked to do today

2     since I am being told in effect that the doctors have now

3     agreed to make themselves available.  So Mr. Reed doesn't need

4     to have me enforce my order because it's agreed that these

5     depositions are going to take place.  All that I think I am

6     being asked is some hypothetical on some level.  You want me to

7     rule that Mr. Reed can't go forward with the depositions unless

8     he stipulates to a certain thing, which he has told me he may

9     not even take action on yet, right?

10             MR. PORPORA:  No, your Honor.

11             THE COURT:  Maybe I am missing it.

12             MR. PORPORA:  Two responses, your Honor.

13             Number one, we weren't asking Mr. Reed for any

14    stipulation.  We were saying, as part of a meet-and-confer

15    call, will you agree not to move forward with trying to seek to

16    modify the protective order?  Nothing more formal than that.

17    The answer I got was, No, we won't agree.

18             Number two, there is currently a response date in the

19    New York action, June 26.  That's the date by which the

20    defendants in that case will move to dismiss the complaint in

21    that action.  So if what we are saying is that Mr. Reed is

22    making a representation that in the short-term, in other words,

23    not before that motion practice plays out, he is not going to

24    make the motion, then that solves it.  I agree with your Honor.

25    But if, instead, he is reserving the right to make a motion, to

me, it does seem like it's a justiciable issue, and for one other reason.

If you actually look at the protective order, and I am happy to bring it up to you, he can't make a motion. Under paragraph 13, and I am happy to bring up a copy to your Honor, it expressly says that all parties acknowledge and agree that they will not seek to modify this order to permit the use of any PHI produced in this proceeding in any proceeding other than this proceeding or the Swiss action. And PHI is protected health information.

THE COURT: So if he makes such a motion, you are going to oppose it and cite that language.

MR. PORPORA: Fair enough.

THE COURT: I agree with you that it would be unfortunate if it comes to that. I mean, I take Mr. Reed's words literally, and I heard him say he has no present intention -- I don't know if those were your exact words, but it's fair to say you have no present intention of seeking to modify the protective order in this case at this time; is that correct?

MR. REED: That's right. I don't have any intention as I am sitting here to make a motion. My only point is I don't know what will happen in the future.

THE COURT: I understand that. And depending on what happens in the future, and depending on if you ever make the

1  motion, and when you make the motion, I think the intervenor in
2  this lawsuit may oppose it on the basis of the language that
3  was just read, or on something else related to what is going on
4  in the New York action, which I may or may not be able to deal
5  with depending on what it is and the like.
6        But I think this is a big discussion about something
7  that essentially has been resolved now.  Which is that the
8  doctors' depositions are being scheduled, and that's what you
9  wanted.  And it may well be, either because your dismissal
10 motion is successful or you end up seeing the testimony, that
11 both sides can agree that they don't have to be deposed again,
12 that the goal that everyone sort of has at bottom is the
13 doctors shouldn't have to be deposed more than once.  Although
14 I had a separate question, which is, I can't imagine these
15 depositions are going to be that long, and the worst-case
16 scenario would be that they are deposed in April of 2023, and
17 then if the motion to dismiss failed and they have to be
18 deposed again in the summer of 2024 or beyond, it will be
19 another hour of their time, which is unfortunate, but if I were
20 a betting man, I think that would be unlikely because I suspect
21 their testimony is going to be what it is, and the parties will
22 find a way to use it to whatever end they need it for at the
23 appropriate time in the state case, because it's a finite sort
24 of set of subject matters I think from my understanding that
25 they are going to be able to cover.

1      I guess what I will say is, I am grateful that you
2 have worked out a schedule so that the doctors' depositions can
3 go forward.  I don't think there is anything more today for me
4 to rule on in any formal way.  I think, Mr. Reed, if you choose
5 to seek to modify the protective order that I signed in this
6 matter at some point, any point, you will either work it out
7 before you make the motion with Mr. Porpora so I won't need to
8 see you again, and if you don't, and you want to make the
9 motion notwithstanding the language Mr. Porpora read into the
10 record, he will likely oppose it, but we will deal with it in
11 that posture at that time.  I think that's probably where we
12 leave this for today, unless somebody thinks more needs to be
13 done than that.
14      Do you have a view?
15      MR. REED:  I think that's precisely right, your Honor.
16      THE COURT:  Mr. Porpora, OK with you?
17      MR. PORPORA:  Very good, your Honor.  Thank you.
18      THE COURT:  Counsel for the doctors, did you want to
19 be heard?  I think you're probably going to be taken care of in
20 the end.  If these depositions get taken in April, it strikes
21 me as unlikely your clients will have to be deposed again, but
22 time will tell.  And if you have a basis as their lawyers down
23 the road to oppose a second deposition, I assume in the first
24 instance that would probably be made in the state court,
25 frankly, not before me, which is one of the concerns I had.

NEO8SAFC

1  But it may well never come to that.  So I will go back to don't
2  trouble trouble until trouble troubles you because it may not
3  be an issue before then.
4           Is there anything else you wanted to be heard on
5  today?
6           MS. LIU:  Nothing from Mount Sinai, your Honor.
7           MR. MATTEO:  Nothing from Sloan-Kettering.
8           THE COURT:  It's been a pleasure having you in federal
9  court this afternoon.  Have a good weekend.
10          (Adjourned)